## State of Indiana, ex rel. Williams *v.* Ellis, Judge.

[No. 22,868. Filed January 26, 1916.]

1. Prosecuting Attorneys.—*Nature of Office.—Removal from Office.*—The office of prosecuting attorney was carved from the common-law office of attorney-general; and while the Constitution, though providing for the election and removal of prosecuting attorneys, does not prescribe their duties, they are officers of the court, charged with duties in general terms prescribed by statute, and comprehending a wider scope than that of a mere attorney, and under §12, Art. 7, of the Constitution, they can be removed from office only by the Supreme Court after conviction of corruption or other high crime. p. 312.

2. Prosecuting Attorneys.—*Nature of Office.*—The office of prosecuting attorney is regarded as a judicial office, in view of important descretionary powers vested in the incumbent, and the constitutional provisions guarding him from removal. p. 313.

3. Common Law.—*Maxims.*—It is a maxim of the common law that no one may be a judge in his own case. p. 313.

4. Constitutional Law.—*Construction of Constitution.—Application of Common-Law Rules.*—In view of the fact that the common law, except as limited by treaties, constitutions and statutes, is in effect, constitutional provisions are to be construed in the light of . the common-law rules. p. 313.

5. Prosecuting Attorneys.—*Disqualification. — Prosecution of Deputy.—Selection of Special Judge.*—Where a deputy prosecuting attorney was indicted for crimes growing out of his alleged actions connected with the office of prosecuting attorney, the prosecuting attorney was incompetent to act in the prosecution, notwith-standing there was no charge of official misconduct against him and no statute prohibiting him from acting; hence he could not participate in the selection of a special judge to try the cases against such deputy, under the act authorizing the selection of special judges in criminal cases by striking off names submitted by the regular judge (Acts 1915 p. 30). pp. 313, 317.

6. Prosecuting Attorneys.—*Disqualification.—Prosecution of Deputy.—Appointment of Special Prosecutor.*—Where a deputy prosecuting attorney was charged with crimes growing out of alleged official misconduct, the prosecuting attorney, being disqualified to act in the prosecution of the cases against such deputy, could not appoint a special prosecutor to proceed with the cases, but the power to make such appointment rested with the court, since under §9407 Burns 1914, §5865 R. S. 1881, authorizing the court to appoint a special prosecuting attorney for the term where the prosecuting attorney fails to attend, though not providing

specifically for the appointment of a special prosecutor for a particular case, it was not the legislative intent to deprive the court of power to make such appointments in special cases, and disqualification to act in a particular case does not cause a vacancy in the office so as to authorize an appointment by the Governor. p. 317.

7. PROSECUTING ATTORNEYS.—*Disqualification.*—*Special Prosecutors.*—*Power of Court.*—The fact that the judge of a court may believe that a given cause may be better prosecuted by some other than the regular official will not alone warrant him in appointing a special prosecutor, since the lack of learning, intellect, or moral courage of any elective officer does not constitute a disqualification to act officially. p. 321.

Original action in the Supreme Court by the State of Indiana, on the relation of Gene Williams, against Frank Ellis, as judge of the forty-sixth judicial circuit of Indiana, for writ of mandate. Defendant files answer to the complaint, to which the relator demurs. *Demurrer overruled.*

*R. S. Gregory, John McPhee, S. A. D. Whipple, Frank B. Jaqua* and *White & Haymond,* for relator.

*Charles W. Smith, Charles Remster, Henry H. Hornbrook* and *Albert P. Smith,* for defendant.

MORRIS, C. J.—Original action in this court under act of March 8, 1915 (Acts 1915 p. 207), for writ of mandate to compel defendant, judge of the Delaware Circuit Court, to call a named, elected and acting judge, to hear a cause in which a change of judge had been granted, and to prohibit further proceedings until the termination of this action. The complaint avers that on. and prior to June 14, 1915, defendant Ellis was the regularly elected and acting judge of the Delaware Circuit Court and that J. Frank Mann was the regularly elected and acting prosecuting attorney of Delaware County; that previous to said June 14, relator, Gene Williams, was indicted in ten different criminal cases; that on said day relator filed his motion in each case for a

change of judge, and each motion was sustained; that thereupon relator and Mann, prosecuting attorney, appeared in open court, presided over by defendant Ellis, and agreed that certain named judges of circuit courts of Indiana should be called to hear and try each of said causes in which relator is defendant, and orally moved that said judges be called to hear the same; that afterwards, on June 18, 1915, the court, defendant presiding, overruled each of said motions and thereupon announced that on the following day five disinterested and competent persons would be nominated by the court from which a judge could be selected to hear each cause. The relator prays for a mandatory order against defendant requiring him to call, to try each cause, the circuit court judge agreed upon by relator and the prosecuting attorney, and to prohibit further proceedings until the final hearing in this case.

In defendant's return to the rule to show cause it is averred that more than a year before the commencement of this proceeding, said prosecuting attorney duly appointed relator as deputy prosecuting attorney for the circuit, and that ever since relator has acted in such capacity; that on March 8, 1915, the grand jury of Delaware County was in session, and, in writing, reported to the court that it desired to investigate the office of prosecuting attorney, and requested the appointment of a special prosecuting attorney to assist it in such investigation; that subsequently, on the same day, said Mann, appeared in open court and filed his written consent to the requested appointment, conditioned on its limitation to the matters relating to the office of prosecuting attorney; that thereafter on the same day, the court appointed William A. Thompson as a special prosecuting attorney to assist the grand jury in matters wherein Mann, regular prosecuting attorney,

was incompetent to act, because of personal interest; that Thompson accepted the appointment; that subsequently, on April 23, 1915, the grand jury returned the said ten indictments against relator, each of which charges relator with a crime growing out of his alleged actions connected with the office of prosecuting attorney, and while he was acting as such deputy; that after the return of the indictments, citizens of the county, by written petition, prayed the court to appoint said Thompson as special prosecutor to prosecute the said causes against relator, and that thereupon Mr. Mann, the regularly elected prosecuting attorney, appeared in open court and consented to the requested appointment; that Mr. Mann, after the return of the indictments against his deputy, openly declared his belief of relator's innocence of the offenses charged, and declared that he would be an important witness for relator at the trials of the causes; that thereafter the court, defendant presiding, by order duly entered did appoint Thompson as special prosecutor to represent the State of Indiana in each of the causes, in all future proceedings therein; that in the order it was found and adjudged that Mann was incapacitated from performing any duty in connection with the prosecution of the cases; that Thompson accepted the appointment; that relator still occupies the position of deputy and is actively engaged in the performance of the duties of his position; that on June 17, 1915, Mr. Mann departed from the State of Indiana, for an absence of many weeks, leaving relator in charge of the office.

The defendant admits the making and overruling of relator's motions as alleged in the complaint, and denies that Mr. Mann had any power to make any binding agreement with relator for the appointment of a special judge, and further avers that he

did, on June 19, 1915, and before the petition herein was filed, nominate five named acting circuit court judges of Indiana from whom a judge in each cause may be selected. Acts 1915 p. 30. A demurrer was filed to defendant's return, which requires us to determine its sufficiency. Our statutory law authorizes a change of judge in certain contingencies. §2074 Burns 1914, Acts 1905 p. 584, §203. Section 204 of the public offense act of 1905 was amended in 1915, to read as follows: "In all cases where the change of venue is taken from the judge in any criminal action pending in any court in this state, or in any case where the presiding judge is disqualified from any cause, to try such cause, if the prosecuting attorney on behalf of the state and the defendant shall agree in open court upon some judge or member of the bar of any court in this state to try such cause, it shall be the duty of such court to appoint such judge or attorney so agreed upon to try such cause. In the absence of such agreement, it shall be the duty of the court within five (5) days to nominate five (5) competent and disinterested persons, each of whom shall be an available judge or member of the bar of this state, to be submitted to the parties in the action from which the State of Indiana, by the prosecuting attorney, for the plaintiff's side and the defendant or defendants, within two (2) days thereafter may strike off two (2) of such names, each. The court shall thereupon appoint such person who shall remain unchallenged to preside in said cause and if the prosecuting attorney and the defendant or his attorney refuse to strike off names, then the clerk of the court shall strike for them. And, if the person so appointed, if not a regular judge, if he consent to serve, such attorney shall be qualified as other judges and his appointment and oath shall be filed with the clerk and

entered on the order book and he shall have power to hear and determine such cause until the same is finally disposed of." Acts 1915 p. 30. Sections 11 and 12 of article 7, of the Constitution of Indiana (adopted 1851), read as follows: Section 11. "There shall be elected in each judicial circuit by the voters thereof, a prosecuting attorney, who shall hold his office for two years." Section 12. "Any judge or prosecuting attorney who shall have been convicted of corruption or other high crime, may, on information in the name of the state, be removed from office by the supreme court, or, in such other manner as may be prescribed by law." The Constitution in nowise prescribes the duties of a prosecuting attorney. The office was unknown to our first Constitution (1816), and was, in its origin, as early as 1824, a creature of statute. *State, ex rel.* v. *Home Brewing Co.* (1914), 182 Ind. 75, 87, 105 N. E. 909. The office was carved out of that of the common-law office of attorney general, who originally discharged all the duties now devolving on the two officers. Prosecuting attorneys, as the name indicates, are officers of the court. *People* v. *May* (1855), 3 Mich. 598. But their official duties comprehend a wider scope than that of a mere attorney. 32 Cyc 689. In this State they can be removed from office only by this court, on previous conviction of corruption or other high crime. *State* v. *Patterson* (1914), 181 Ind. 660, 105 N. E. 228; *State* v. *Redman* (1915), 183 Ind. 332, 109 N. E. 184. Their duties are, in general terms, prescribed by statute. §§9405, 9406 Burns 1914, §§5863, 5864 R. S. 1881.

No small part of plaintiff's brief is devoted to the proposition that the Delaware Circuit Court had no right to remove the prosecuting attorney from the office to which he was regularly elected. The rec-

ord discloses no removal from office, nor attempt in such direction. It presents only the questions, (1) Was Mr. Mann incompetent to prosecute relator, and, if so (2) Did the circuit court have power to appoint a special prosecuting attorney in the causes in controversy, and, if such appointment was valid, (3) Did the regular prosecuting attorney have the power, under the act of 1915 (Acts 1915 p. 30), to agree, on behalf of the State, to the selection of a judge to hear the causes in question? Was Mr. Mann, under the facts here alleged, incompetent? Manifestly he was of the opinion that he was disqualified, for he consented to the appointment made by the court. Notwithstanding, relator contends that the order was void on its face, and that he has a right to demand that this prosecution be by the officer elected by the people. The prosecuting attorney has been held a judicial officer. *State* v. *Henning* (1870), 33 Ind. 189. Certainly he is invested with important discretionary power in a motion for a *nolle prosequi*. The Constitution guards him against removal as it does the judge. *State* v. *Patterson, supra.* The statute authorizes him to appoint a deputy (§9158 Burns 1914, §5568 R. S. 1881), and the latter can perform any duty pertaining to the office. *Stout* v. *State* (1884), 93 Ind. 150. It was a maxim of the common law that no one can be a judge in his own case. Cooley, Const. Lim. (7th ed.) 592, 595; Coke, Litt. §212. The common law was adopted here when Indiana was a territory, and has, except as limited by treaties, constitutions and statutes, been ever in effect since the State's admission to the Union. In such cases, constitutions and statutes should be construed in the light of common-law rules. Cooley, Const. Lim. (7th ed.) 94; *Curless* v.

*Watson* (1913), 180 Ind. 86, 90, 91, 102 N. E. 497. In *Markley* v. *Rudy* (1888), 115 Ind. 533, 536, 18 N. E. 50, where a county surveyor was interested in a ditch, and of kin to other parties interested, and was attempting to perform official duties in regard to its repair, this court said: "It is a fundamental rule in the administration of justice that no person can be judge in a cause in which he is interested. * * * This elementary principle has been so long and so universally recognized that it has become an accepted legal maxim. Broom, Legal Maxims 116. It is also a general rule, nearly as well recognized, that no executive or administrative officer shall take official action in a matter involving the rights of others in which he is personally interested." It was further declared in the opinion, that *Kelly* v. *Hocket* (1858), 10 Ind. 299, in so far as it conflicted with that opinion, was overruled. In *Metsker* v. *Whitsell* (1914), 181 Ind. 126, 137, 103 N. E. 1078, it was held that a county commissioner who, previous to his election, was surety on an appeal bond in a former appeal of a highway proceeding was disqualified, because of interest, from acting in the matter. In *Juliana* v. *State* (1906), 167 Ind. 421, 79 N. E. 359, the appellant, pursuant to statute, was granted a change of judge in a criminal proceeding. At that time it was necessary for the regular judge to appoint the special one to hear the cause. A statute then in force denied a defendant more than one change of judge. §2078 Burns 1908, Acts 1905 p. 584, §207. The regular judge appointed as special judge, an attorney who had been consulted by appellant for employment as his attorney, but who was never so employed. The appellant, notwithstanding the one change procured by him, objected to the appointment because the appointee was not disinterested. In reversing the judgment of

conviction, and vacating the appointment of the special judge, the court quoted approvingly from *Joyce* v. *Whitney* (1877), 57 Ind. 550, 554, as follows: "Judges are by no means free from the infirmities of human nature, and, therefore, it seems to us, that a proper respect for the high positions they are called upon to fill should induce them to avoid even a cause for suspicion of bias or prejudice in the discharge of their judicial duties." See, also, *Small* v. *Buchanan* (1905), 165 Ind. 549, 76 N. E. 167. In *Knickerbocker Ice Co.* v. *Gray* (1905), 165 Ind. 140, 72 N. E. 869, 6 Ann. Cas. 607, 610, note, it was held that a stenographer of an attorney of one of the parties to an action was disqualified by interest from writing the deposition of a witness for use on the trial. In *Wilson* v. *State* (1861), 16 Ind. 392, it was held that an attorney who had previously been consulted for employment by defendant could not appear in his prosecution, though there was no express statute which prohibited such iniquitous practice. In *Block* v. *State* (1885), 100 Ind. 357, the appellant was convicted of murder in the Decatur Circuit Court on an indictment returned by the grand jury of Rush County. One of the jurors was Sanford Grayson, a person not regularly engaged in the practice of law, but who, previous to the commission of the alleged offense, had been appointed by the prosecuting attorney of Decatur County as his deputy, in and for an outlying township of that county. Appellant was ignorant of such appointment until the trial was concluded. In his motion for a new trial he presented the question of Grayson's competency. Grayson made affidavit that his relation with the prosecuting attorney in nowise affected his verdict, that he was not questioned on such subject on his *voir dire*, and that when examined it did not occur

to him that his employment could affect the question of his competency.  The trial court overruled the motion for a new trial, and this court conceded in the opinion that the failure of the juror and prosecuting attorney to make known their relation, before the jury. was sworn, was a mere inadvertence. On behalf of the state it was contended that because of the statute (§1793 R. S. 1881, §1862 Burns 1901), which provided that the "following, and no other, shall be good causes for challenge," and which did not designate any matter of the kind there in controversy as a proper cause, precluded the holding of reversible error on appeal.  In reversing the judgment the court quoted with approval from *Central R. Co.* v. *Mitchell* (1879), 63 Ga. 173, the declaration that "A close relative is a less dangerous juror  *  *  *  than one who is dependent on his employer."  To the same effect, see *Gaff* v. *State* (1900), 155 Ind. 277, 55 N. E. 74, 80 Am. St. 235; *Zimmerman* v. *State* (1888), 115 Ind. 129, 17 N. E. 258.

In this case, if the facts warrant, it would be the prosecuting attorney's duty, both to the people whose majesty he represents, and to the defendant whose lawful rights he may not disregard, to move for a *nolle prosequi*.  He owes a duty to both State and defendant, and if the facts are such as to preclude the exercise of his full duty to both he should step aside.  *People* v. *Fielding* (1899), 158 N. Y. 542, 53 N. E. 497, 70 Am. St. 495, 46 L. R. A. 641; *State* v. *Montgomery* (1909), 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, 21 Ann. Cas. 331; Cooley, Const. Lim. (7th ed.) 440, and note 2. It would scarcely be questioned that relator might lawfully have objected to Mr. Mann having conducted relator's prosecution, had the former, on the return of the indictments, promptly discharged

relator as his deputy, and stated that he expected to be an important witness for the State. Indeed, on the facts stated in the return, we are of the opinion that relator might claim the right to be prosecuted by an officer not affected by such employment relation. To the credit of Mr. Mann be it said that he promptly consented to the suggestion that he was incapacitated from conducting the prosecution. Moreover, in the brief of defendant judge, it is stated that he makes no charge against Mr. Mann of any sort of official misconduct. We are of the opinion that Mr. Mann was disqualified from prosecuting the cases.

However, it is claimed by relator that, conceding Mr. Mann's disqualification, it is incumbent on him to appoint the special prosecutor. We do not concur in this view. One may not do indirectly what the law forbids him doing directly. A like question was presented to the Oklahoma Criminal Court of Appeals, which held that "the county attorney, being disqualified in this case, was without power or authority to appoint any one to represent him." *Hartgraves* v. *State* (1911), 5 Okl. Cr. 266, 114 Pac. 343, 33 L. R. A. (N. S.) 568, Ann. Cas. 1912 D 180. While the act of 1915 (Acts 1915 p. 30) requires the appointment of a judge agreed on by the defendant and prosecuting attorney it must be held that the prosecuting officer contemplated in any case is the officer authorized to prosecute it, and since Mr. Mann is here disqualified, he was not authorized to make any binding agreement for the appointment of a special judge.

Relator contends, however, that the court was without lawful authority to appoint any special prosecutor, and that the law makes no provision therefor, and consequently a situa-

tion is presented that necessarily requires the conclusion that the regularly elected prosecuting attorney may make a binding agreement regardless of his disqualification. A statute of Indiana, in force since 1824, reads as follows: "If any prosecuting attorney fail to attend any court of his circuit, the judge of such circuit shall appoint some person to prosecute for such term, who shall receive the docket-fees of such term and such additional compensation as the court may deem reasonable, to be drawn from the state treasury on the allowance of the court, and which allowance shall be deducted from the salary of such prosecutor." §9407 Burns 1914, §5865 R. S. 1881. In *Dukes* v. *State* (1858), 11 Ind. 557, 71 Am. Dec. 370, the appellant was tried by a special prosecutor on an indictment signed by him. It appears that at a term of court, the regular prosecutor failed to appear and the court appointed an attorney as special prosecutor for the term. In that case, however, such special prosecuting attorney was disqualified, because he was of counsel for appellant, and, thereupon, the court appointed Mr. Suit as special prosecutor for that case, who signed the indictment and conducted the prosecution. On appeal it was contended (1) that the indictment was bad because not signed by the regular prosecuting attorney, and (2) that Suit's appointment was void "and, hence, that there was no prosecutor in the case." Each contention was overruled. The reason assigned in the opinion for overruling the first objection was that no signature by a prosecuting attorney was necessary. The reason given for overruling said second objection was that "the court possesses an inherent power to appoint one of the attorneys of the court, when necessary to prevent a failure of justice, to conduct the prosecution of a criminal." Assigning such reason, for the act of ap-

·· pointment of Suit, was criticized in *Board, etc.* v. *McGregor* (1909), 171 Ind. 634, 87 N. E. 1, 17 Ann. Cas. 333, a case involving compensation from the · public treasury to an attorney who assisted the regular prosecutor in his duties. · In that case, in discussing the Dukes case, on page 637, it was said: "The act of the judge in appointing another, *pro tem,* to fill the *vacancy* caused by the disqualification of the prosecutor in that particular case was · not the exercise of an inherent power of the court, but rather the exercise *of a power implied from the statutory authority* to fill the temporary vacancy." ·(Italics ours.)  It often happens that courts reach right results but state incorrect reasons for their actions.  In this case it is not important whether the court's authority to appoint is derived from implied statutory grant, or inheres from implied constitutional authority.  The McGregor case, *supra,* does not purport to overrule the Dukes case in its holding.  It only assumes to declare that an incor- ·rect reason was given for a lawful act.  And, unless we resort to extreme technicality, there is little reason for holding that where the legislature expressly · provided that the court might appoint a special prosecutor for a whole term, because of the regular prosecutor's absence, that it did not intend that the court might appoint a special prosecutor for the usually short period required to dispose of a single case, where the regular prosecutor was disqualified from acting.  A disqualified officer might just as well be absent as present.  His physical presence in court would in nowise affect the trial of causes where the law prohibits him from participating.  It· has · been known by all legislatures since 1824, that it must often happen that prosecuting attorneys, · elected every two years, will be incapacitated from prosecuting· particular cases because of previous

retainers by the accused, and, sometimes, because the prosecuting attorney might be the defendant in a criminal charge. *State* v. He*nning, supra.*

A vacancy in the office of prosecuting attorney is filled by the Governor, but no one contends that a disqualification of such attorney to prosecute a single case causes such vacancy. If the circuit court is not warranted in making such appointment, authority therefor must be held lacking, in which case, after three terms, the accused would be properly discharged. §2091 Burns 1914, Acts 1905 p. 584, §220; *State* v. *Kuhn* (1900), 154 Ind. 450, 56 N. E. 106. It is not conceivable that the legislature ever contemplated such absurd result. In *Dukes* v. *State, supra,* it was held, in 1859, that the circuit court had the power to appoint a special prosecutor where the regular one was disqualified. Probably the decision was in line with the practice followed theretofore since the office of prosecuting attorney was created. It recognized a power followed by courts of other states, except where other provision is made. *Hartgraves* v. *State, supra; State* v. *Flavin* (1915), 35 S. Dak. 530, 153 N. W. 296; 32 Cyc 719; 12 Cyc 531; *Taylor* v. *State* (1905), 49 Fla. 69, 38 South. 380; *King* v. *State* (1901), 43 Fla. 211, 31 South. 254; *State* v. *Moxley* (1890), 102 Mo. 374, 14 S. W. 969, 15 S. W. 556; *Commonwealth* v. *McHale* (1881), 97 Pa. St. 397, 39 Am. Rep. 808; *White* v. *Polk County* (1864), 17 Iowa 434; *Keithler* v. *State* (1849), 18 Miss. 192; *Territory* v. *Harding* (1887), 6 Mont. 323, 12 Pac. 750. We are of the opinion that, under the facts stated, the court was authorized to appoint a special prosecutor in the cases where Mr. Mann was disqualified.

It is contended by relator that if it be held proper to appoint a special prosecutor here that a judge of a

circuit court may arbitrarily appoint a special prosecuting attorney in any case without other restraint than his own will. Warrant for such contention will not be found in this opinion. We do not hold that because the judge of some court might be of the opinion that a given cause might be better prosecuted by some one other than the regular official, he would, therefore be warranted in appointing such other person as special prosecutor. Neither lack of intellect, learning, nor even moral courage, in prosecuting attorney, judge or other elective officer, constitutes a disqualification to act officially, and a judge would no more be justified in supplanting a prosecuting attorney for such deficiency than would the latter be warranted in demanding a more learned, conscientious and capable judge to hear the causes he must prosecute. The responsibility for lack of capacity in officers must rest on the people who elected them. *State* v. *Flavin,* *supra.*

The demurrer to defendant's return is overruled. Spencer and Erwin, JJ., dissent.

## DISSENTING OPINION.

SPENCER, J.—I do not concur in the majority opinion in this case, and desire to state as briefly as possible my reasons for dissenting therefrom. First, I can not agree that the questions presented by this action are limited to those discussed in the majority opinion, or rather that they are exactly as there stated. It is true that the record discloses no permanent *removal* from office of the prosecuting attorney, nor any attempt in that direction. The action taken by the trial court, however, was tantamount to a temporary *suspension* and this fact directly presents for determination the right of a

court of criminal jurisdiction thus to suspend the regularly elected prosecuting attorney. It is stated in the majority opinion that the questions to be considered are: "(1) Was Mr. Mann incompetent to prosecute relator, and, if so (2) Did the circuit court have power to appoint a special prosecuting attorney in the causes in controversy, and, if such appointment was valid (3) Did the regular prosecuting attorney have the power, under the act of 1915 (Acts 1915 p. 30), to agree, on behalf of the State, to the selection of a judge to hear the causes in question."

As I view the record, however, the first of the above propositions is presented but incidentally, if at all, while the third should be determined in the affirmative without question under the facts stated in the pleadings, and after holding invalid the appointment of Mr. Thompson as special prosecutor. The second proposition, however, suggests the real question in this case, which, to my mind, is not so much whether the circuit court had "power to appoint a special prosecuting attorney," but whether it had the right to exercise that power on its own initiative. In reaching its conclusion that the defendant in this action was authorized to appoint a special prosecutor, the majority opinion relies mainly on §9407 Burns 1914, §5865 R. S. 1881, and on the case of *Dukes* v. *State* (1858), 11 Ind. 557, 71 Am. Dec. 370, which undertakes to construe the same. There can be no doubt that when a prosecuting attorney fails "to attend any court of his circuit," there is presented an emergency in which the judge of that circuit may, and it is probably his duty to "appoint some person to prosecute for such term." In the Dukes case this court overruled the appellant's contention that the appointment of the special prosecutor therein was void, and gave as its reason

for such ruling that "the court possesses an inherent power to appoint one of the attorneys of the court, when necessary to prevent a failure of justice, to conduct the prosecution of a criminal." This statement was properly criticized in the case of *Board, etc.* v. *McGregor* (1909), 171 Ind. 634, 87 N. E. 1, 17 Ann. Cas. 333, wherein it was said that the appointment in the Dukes case was rather the "exercise of a power implied from the statutory authority to fill the temporary vacancy." But whether the power of appointment, assuming its existence, is inherent in character, or is to be implied from statutory authority, the question here to be determined is the proper manner in which its exercise may be invoked.

It is true that the prosecuting attorney is an *officer of the court,* but that expression is to be construed in its larger sense, as meaning a part of the judicial tribunal created by law for the administration of justice. In that capacity he is a public officer, and "the public nature of his employment results from the fact that he represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted. * * * It is his relation to his client, not to the court, that makes him a public officer." *Fleming* v. *Hance* (1908), 153 Cal. 162, 167, 94 Pac. 620. Again, to transpose slightly the opening words of the sentence, it is said in *State, ex rel.* v. *Friedley* (1893), 135 Ind. 119, 128, 34 N. E. 872, 21 L. R. A. 634, that the office of prosecuting attorney, as well as circuit judge, "is a public trust, committed by the public to an individual, the duties and functions of which he is bound to perform for the benefit of the public, and entitles him to exercise all the duties and functions of the office." The judges of the circuit courts and the prosecuting

attorneys are, therefore, neither dependent nor interdependent on one another for authority, but each office is complete in itself within the sphere of its particular powers and duties, and the incumbent of each is responsible to the public alone for his proper discharge of such duties. The result of the majority opinion is to say that the judge in a criminal case, being advised of facts which, in his judgment, serve to disqualify the prosecuting attorney from acting in that particular case, may, of his own initiative, appoint a special prosecuting attorney to proceed with the conduct of that case. Such right does not exist. When a public officer is present at the scene of his official duties and is able to discharge such duties, the law affirmatively presumes that he will faithfully perform the same, and in the absence of an express charge and proof to the contrary that legal presumption will prevail. If the people of the State are unwilling to believe that those whom they select to conduct their prosecutions will at all times remain faithful to the trust which is reposed in them, they may then provide a method of supervision which shall authorize a transfer of such trust to other hands when necessary, but so long as they are willing to accord to their public officers the presumption that official duties will be faithfully performed, and insist on punishment only when the trust is actually betrayed, it is not incumbent on one public officer to prejudge the official conduct of another and take it on himself to relieve the latter of his office, even temporarily.

The situation which is presented by the record before this court is not without solution, and, in the opinion of the writer, a solution may be reached (1) which shall be in full harmony with the rights accorded to prosecuting attorneys by virtue of their election to public office; (2) which shall make proper

provision for the appointment of special prosecuting attorneys when the need arises, and (3) which will prevent the occurrence of certain evils which are now made possible, if not invited by the holding of the majority.

Whether the circumstances in a particular case should serve to disqualify a prosecuting· attorney from acting therein is a matter which can not be settled through the enunciation of a general rule. The influence of such circumstances is best known to the prosecutor himself and it is but fair and right to assume that when such an officer is convinced that he can not act impartially in a matter at hand, or doubts his ability so to do, he will advise the court of such facts and request the appointment of an assistant.   There can be no doubt that "He owes a duty to both State and defendant, and if the facts are such as to preclude the exercise of his full duties to both he should step aside."   It would be his duty to take such action and to deny to him in this matter, as in any other, the presumption that he will do his duty is a reflection not alone on the officer himself but on the people who are responsible for his election.   As decided by this court in a number of cases, and as thus stated in *Wood* v. *State* (1883), 92 Ind. 269, 270:_ "A prosecuting attorney may properly ask the court to appoint attorneys to assist him in the prosecution of a man accused of crime, and the court commits no error in granting the request.   The law freely accords to the accused the assistance of such counsel as he may desire, and there is no reason why the same privilege should not be accorded to the State."   The exercise of this right is not limited to those cases in which matters of particular importance are involved or in which the prosecutor recognizes that the defense is receiving unusual preparation, but it is equally avail-

able when that officer, in the conscientious discharge of his trust, feels that his personal relationship to the accused is or has been such as to make proper his retirement from the case. He may, and it is to be presumed that he will then, request the appointment of another to act in his stead, and the court may exercise its own discretion in selecting the appointee, but until such request is actually made the court has no right to exercise any power of appointment.

The use of the term "inherent power," as applied to the authority which courts have to appoint an attorney for those who are unable to employ their own counsel, has given rise to apparent confusion in some of the decisions which deal with that right, but, whatever the nature or source of that power, the method of its invocation is well settled and finds clear analogy in the matter now under consideration. As said in *Hendryx* v. *State* (1892), 130 Ind. 265, 268, 29 N. E. 1131: "The power, as well as the duty of the court, to assign to poor persons, charged with serious crimes, counsel for their defense, upon a proper showing, is no longer open to dispute in this State." But while the court has such power and may, on its own motion, advise the accused that he is entitled to counsel, it is not the duty of the court to appoint such counsel except on proper showing and *on the application of the accused.* As stated in 8 R. C. L. 84: "The defendant's right to counsel being optional to him, it is for him to assert it. Unless he claims his right, and his request for the assistance of counsel appears by the record to have been denied by the court, no invasion of this right is disclosed." A similar principle is applicable here. The prosecutor may request assistance or ask that he be relieved in a particular case, but until he does, the court may not act. The judge

of a circuit court has no right to prosecute either civil or criminal cases and is under no obligation so to do. The true sphere of his duty is to adjudge and administer the law impartially to all parties before the court, leaving the conduct of all causes, civil and criminal, in the hands of those whose duty it is to conduct them. Section 12, article 7, of our Constitution provides for the removal from office of "any judge or prosecuting attorney who shall have been convicted of corruption or other high crime," and the law provides for their removal on no other ground. *State* v. *Patterson* (1914), 181 Ind. 660, 102 N. E. 228. If a prosecuting attorney should render professional assistance, directly or indirectly, to the defendant in a criminal action, he would violate his duties as such officer (*In re Voss* [1903], 11 N. Dak. 540, 550, 90 N. W. 15) and would be liable to removal from office in the method prescribed, but so long as it appears from his own conduct that he is engaged in the faithful performance of his official duties he is not to be prejudged guilty of malfeasance in office.

The majority opinion suggests, in discussing Mr. Mann's right to appoint the special prosecutor, that "one may not do indirectly what the law forbids him doing directly." Yet to hold, in effect, that a circuit judge may, of his motion, *suspend* the prosecuting attorney in a particular case is to open an indirect way to a practical removal from office of such official. Certainly the conduct of that office might be seriously interfered with. As is said in *Sayles* v. *Circuit Judge* (1890), 82 Mich. 84, 90, 46 N. W. 29: "The circuit judge is a conservator of the peace, but that does not authorize him to appoint any one to act as a public prosecutor, except in his own court, in cases over which he has jurisdiction. Even then his power is statutory. Nor would it be for the

public interest to permit a complaining witness, or other person interested in a criminal prosecution, before the case reaches the circuit court, to petition the circuit judge to depose the prosecuting attorney, even if such attorney is confessedly disqualified from acting as prosecutor. If this were allowed, the circuit courts would be applied to, in almost every criminal inquiry or prosecution, to set aside the prosecuting attorney because of his inaction or bias, and to appoint some attorney in his stead; because, if the prosecuting attorney performs his duty in such cases, as he should, in the interest of the whole people, the complaining witness is seldom satisfied." Nor is this argument met by the statement of the majority herein that "Warrant for such contention will not be found in this opinion." What better reason exists for believing that a circuit judge will exercise his power of suspension and appointment only when there is actual disqualification of the elected officer than for refusing to believe that the latter will respect his oath of office and ask to be relieved when the circumstances prompt such request? Why are we to assume that when a regularly elected prosecutor is suspended, perhaps over his honest protest, a special prosecutor who is prejudiced against the accused will not be knowingly appointed by the court? Surely, if the prosecuting attorney is not entitled to the legal presumption that he will perform the duties of his office fairly and impartially, is that presumption to be accorded to the judge? In brief, the holding of the majority makes possible a situation in which, in the event of actual corruption on the part of the trial judge, the position of the accused in a particular case might be rendered perilous indeed, and in which, when the interests of the public in general are considered, the possibilities for a miscarriage of justice

State, ex rel. *v.* Ellis—184 Ind. 307.

would exceed those arising out of isolated cases
wherein the prosecutor chose to act, though dis-
qualified.   The opinion in the case of *Pippin* v.
*State* (1854), 34 Tenn. *42, contains language which
is peculiarly applicable to several phases of the mat-
ter now under consideration.   The court there re-
viewed the action of the trial court in appointing a
special "attorney-general", or prosecutor, and said,
beginning at page 44:   "The prisoner, Willis Pippin,
was convicted, in the circuit court of Jackson, on
an indictment for larceny.   He moved in arrest of
judgment, and the motion being overruled, he ap-
pealed in error to this court.   The indictment pur-
ports to be preferred, and *signed*, not by the regular
attorney for the state, but by 'Benjamin B. Wash-
burn, special attorney-general.'   He was appointed
by an order of the court, in the following terms, to
wit:   'It appearing to the court that Thomas B.
Murray, the attorney-general for the state, is in-
competent to prosecute the suit of the *State* v.
*Willis Pippin*, for larceny, he having been em-
ployed to defend him against said charge before his
election and qualification to said office, Benjamin
B. Washburn was thereon appointed, by the court,
attorney-general to prosecute said suit in behalf of
the state, who appeared in open court and was
qualified according to law.'   In virtue of this order
the prosecution was instituted and conducted by
the said Washburn, acting as attorney-general for
the state.   The question is, Was this a valid ap-
pointment?   The Constitution, Art. 6, §5, provides
that 'in all cases where an attorney for any district
fails or refuses to attend and prosecute, according
to law, the court shall have power to appoint an
attorney *pro tempore.*'   It is clear that by this clause
of the Constitution two cases are provided for:
First, where the regular attorney for the state *fails*

to attend and prosecute. Second, where he *refuse*
to attend and prosecute. In either case the court
has power to make an appointment *pro tempore.*
*   *   *   In the exercise of the power to appoint,
it is material to state, in the order, the facts which
render it necessary, so that it may appear to be a
case under the Constitution. For the court has no
general power to appoint an attorney for the state,
but a *special* power merely; and in its exercise the
facts must appear, on the existence of which the
validity of the appointment depends. Now, does
the order of appointment assume the existence of a
case specified in the Constitution? It states that the
attorney-general, having been of counsel for the
accused, was incompetent to perform his office, and
then proceeds to make a special appointment. It
does not state that he *failed* to attend and prose-
cute, or *refused* to attend and prosecute—the cases
specified in the Constitution—but states a differ-
ent case, not so specified. Nor do we see that the
cause stated rendered the attorney legally incompe-
tent, or that such objection to the exercise of his
office would lie against him. Certainly it was a good
and sufficient reason why he should himself 're-
fuse to attend and prosecute;' and if he had so acted,
the power to appoint was clear and explicit. But it
does not appear that he either offered or refused to
prosecute, or took any action in the case. We have
only the action of the court, which declares him in-
competent, and makes a special appointment for a
new *cause*, not stated in the Constitution. We think
it clear that the appointment of the attorney *pro
tempore* was void."

In conclusion, then, it is my opinion that the
record at bar discloses no warrant for the action of
the Delaware Circuit Court in appointing the special
prosecutor, Mr. Thompson, and his appointment

was void. The allegation in defendant's answer, "That said J. Frank Mann appeared in open court and consented that said William A. Thompson be appointed special prosecuting attorney" is not equivalent to an allegation that he admitted his disqualification and asked to be relieved. And other averments of the pleading show clearly that he considered himself authorized to act as the prosecuting attorney in the case and assumed so to act. In my judgment, the demurrer to defendant's return should have been sustained.

Erwin, J., concurs in this dissenting opinion.

NOTE.—Reported in 112 N. E. 98. See, also, under (1, 2) 32 Cyc 689; (4) 8 Cyc 383; 8 Cyc 740; (5) 12 Cyc 530; (6) 12 Cyc 531; 32 Cyc 719, 721; (7) 32 Cyc 719.