**In the Matter of Charles M. OBERLY, III, Attorney General.**

Supreme Court of Delaware.

Submitted: Jan. 20, 1987.
Decided: May 1, 1987.

& Williams, Wilmington, for Charles M. Oberly, III, Atty. Gen.

Before CHRISTIE, C.J., MOORE and WALSH, JJ., constituting the qualified and available Justices of the Court, *en banc.*

WALSH, Justice:

This proceeding was initiated by John G. Davis, Jr., the State Election Commissioner ("the Commissioner"), who petitioned this Court to refer to the Court on the Judiciary a complaint against the incumbent Attorney General of Delaware, Charles M. Oberly, III. The complaint, which arose out of the 1986 Democratic Primary Election, was filed with the Commissioner by Brian J. Bartley, Oberly's opponent in the primary election,[1] alleging violations of the Campaign Financing and Disclosure Act ("the Act"), 15 *Del.C.* §§ 8001–8013. Oberly has filed a response to the Commissioner's petition in which he denies any violation of the Act but joins in the request that the charges be referred to the Court on the Judiciary for adjudication. The parties were directed to brief and argue certain questions raised by the Court, *sua sponte.* After consideration of the parties' submissions, we conclude that the Court on the Judiciary has no jurisdiction to consider complaints arising under the Act and that the statutory direction to the contrary is a nullity.

## I

Bartley's charges of campaign violations were contained in a letter dated August 28, 1986, sent by him to the Commissioner. Bartley alleged that (a) Oberly failed to include in his campaign financing report the expenditure for an advertisement appearing in an issue of *Delaware Today* magazine, in violation of section 8007 of the Act,[2] (b) the magazine advertisement's

Harold Schmittinger and William W. Pepper (argued), Schmittinger & Rodriguez, P.A., Dover, for petitioner, John G. Davis, Jr., State Election Com'r.

Henry N. Herndon, Jr. and Edward M. McNally (argued), Morris, James, Hitchens

1. The Oberly-Bartley primary election was the subject of a previous ruling by this Court involving compliance with State primary election procedures. *See Bartley v. Davis,* Del.Supr., 519 A.2d 662 (1986).

2. 15 *Del.C.* § 8007 reads in pertinent part:

 **§ 8007. Reports and sworn statements.**
 (a) Each candidate and each committee treasurer shall file with the State Election Commissioner reports of contributions and expenditures on forms prescribed by the Commissioner.

statement that it was paid for by "Citizens to Elect Oberly" violated section 8005(b) of the Act,[3] in that it was not true, since that organization had not in fact paid for the advertisement, (c) Oberly failed to report such violations immediately to the Commissioner, as required by section 8002(d) of the Act,[4] and (d) certain advertisements supporting Oberly's candidacy and appearing on public buses contained no "paid for" statements.[5]

In forwarding Bartley's allegations to this Court, the Commissioner requested that this Court refer Bartley's allegations to the Court on the Judiciary pursuant to section 8012(a), appoint a special prosecutor under section 8012(c) to represent the State's interests, and relieve the Commissioner of further responsibility in the matter.[6]

> (b) Such reports shall be filed 20 days prior to the date of an election and by the 31st day of December of the year following the election. Reports shall also be filed by the 31st day of December following the election and each year thereafter by the 31st of December until such time as contributions and expenditures are balanced and the fund closed; provided, however, that any surplus in the campaign fund of any candidate or political committee may be contributed to a tax-exempt charitable or political organization, if such donation is authorized by the candidate and noted in the required report.
>
> &ast; &ast; &ast; &ast; &ast; &ast;

3. 15 *Del.C.* § 8005(b) reads:
> (b) All campaign literature or advertising, with the exception of such items as pins, buttons, badges, emblems, hats, bumper stickers and similar materials, shall carry the statements: "PAID FOR BY ......" (name of candidate, political committee, organization or person paying for such literature or advertising).

4. 15 *Del.C.* § 8002(d) reads:
> (d) It shall be the duty and responsibility of a candidate to report immediately to the State Election Commissioner any attempt to make a contribution or demand an expenditure prohibited by this chapter.

5. This claim appears to allege a violation of 15 *Del.C.* § 8005(b). *See supra*, n. 3. On September 4, 1986, this Court received a letter from a private citizen alleging that the omission of such "paid for" statements violated § 8005(b) and requesting this Court to "investigate and prosecute this crime."

On September 3, 1986, this Court issued an order raising, *sua sponte*, three jurisdictional and procedural issues. These issues are:

1. Whether, since it appears Oberly is not a "judicial officer" within the meaning of Article IV, § 37 of the Delaware constitution, which delimits the jurisdiction of the Court on the Judiciary,[7] that provision prevents 15 *Del.C.* § 8012 from empowering the Court on the Judiciary to act, upon referral by this Court, upon the violations of 15 *Del.C.* Ch. 80 alleged in this case.

(2) If the Court on the Judiciary lacks jurisdiction over complaints arising under Chapter 80, Title 15, what procedural steps are required of the State Election Commissioner to investigate such complaints and seek enforcement of Chapter

6. 15 *Del.C.* § 8012 provides:
> (a) Whenever a complaint shall be brought against the candidate(s) for Attorney General of the State, such complaint shall be directed to the Supreme Court of the State, for action under the rules of the Court on the Judiciary.
> (b) Complaints under the provisions of subsection (a) of this title may be initiated by any party in possession of information supporting, or tending to support, the complaint. All hearings before the Court on the Judiciary in connection with such complaint shall be private. Upon the vote of a majority of the members of the Court on the Judiciary, its findings and recommendations shall be directed to the appropriate enforcement authority for this chapter and to the House of Representatives, in the case of a successful candidate for Attorney General, for such action as the House shall determine.
> (c) Whenever it shall occur that an action before the courts of Delaware is initiated for or against the Attorney General as a result of this chapter, the Supreme Court, by majority vote, shall appoint a special prosecutor, who shall be licensed to practice before the courts of Delaware and a registered decline on the voter registration rolls of the county in which said attorney resides. Such appointee shall be responsible for the State's portion of such court action for or against the Attorney General.

7. Del. Const. art. IV, § 37 reads, in pertinent part:
> Any judicial officer appointed by the Governor may be censured or removed or retired by the Court on the Judiciary as herein provided.
>
> &ast; &ast; &ast; &ast; &ast; &ast;

80, Title 15 with respect to candidates for the office of Attorney General?

(3) If the Court on the Judiciary has no jurisdiction to hear the allegations in this case, what court or courts do have jurisdiction, and what procedural steps are required of such court or courts under applicable statutes and rules?

On September 19, 1986, this Court issued an order which raised a fourth issue *sua sponte*. That issue is whether the provision empowering this Court to appoint a special prosecutor, 15 *Del.C.* § 8012(c), remains valid if subsections (a) and (b) of section 8012, which concern the jurisdiction of the Court on the Judiciary, are deemed unconstitutional.

## II

In response to the four questions raised by the Court, the parties are in partial agreement as to the meaning and enforceability of section 8012 as it applies to Attorney General candidates. Both the Commissioner and Oberly agree that if the Court on the Judiciary lacks jurisdiction to adjudicate complaints against candidates for the office of the Attorney General, the Commissioner has no independent statutory authority to investigate complaints brought against such candidates, but is nevertheless required to report perceived violations of the election laws to the Attorney General. The parties also agree that within section 8012, subsection (c) is severable from subsections (a) and (b), with the result that even if the Court on the Judiciary lacks jurisdiction to entertain election law claims, the Superior Court has jurisdiction to hear such claims, and this Court may appoint a special prosecutor to prosecute an Attorney General candidate upon the filing of an appropriate criminal complaint by any person.

The parties part company, however, on the question of whether the Court on the Judiciary has jurisdiction over complaints against candidates for Attorney General. The Commissioner argues that any attempt by the General Assembly to create such jurisdiction through statute is invalid, since the Court on the Judiciary is constitutionally limited to reviewing the conduct of judicial officers. Since the Attorney General is not a judicial officer, the argument runs, the statute is invalid on its face. Oberly argues to the contrary, that since Article IV, § 1 of the Delaware constitution permits the "judicial power of this State" to be vested in "such other Courts as the General Assembly ... shall from time to time by law establish," section 8012(a) represents simply the implementation of such authority. We find the arguments of the Commissioner persuasive and consonant with the constitutional scheme underlying the establishment of the Court on the Judiciary.

The Court on the Judiciary was established through a constitutional amendment which became effective in 1969 to provide a mechanism to adjudicate complaints involving the conduct of State judges. Prior to its enactment the sole method of judicial discipline was removal from office through the process of impeachment. The impeachment process is cumbersome in application and lacks a gradation of sanctions. The establishment of the Court on the Judiciary provided another forum for processing complaints against judges, with the alternative of censure as well as removal, and for involuntary retirement of judges for physical or mental disability. Del. Const. art. IV, § 37. The need for a disciplinary method short of impeachment is obvious in the case of public officers such as judges who are appointed for twelve year terms. The Attorney General, on the other hand, as an elected official is subject not only to impeachment but recall through the election process every four years.

The inclusion of the Attorney General as the subject of investigation and disciplinary recommendation before the Court on the Judiciary is contrary not only to the obvious purpose of a judicial disciplinary mechanism, but to the language of the constitutional provision, which extends its reach to "any judicial officer appointed by the Governor."

In the search for definition of the term "judicial officer," we need only look to the debates which preceded the adoption of our present constitution. In the spirited dis-

cussion which led to the vote making the Attorney General's office an elective one, the proponents of that proposition, led by William C. Spruance, drew a distinction between the duties of the Attorney General and those of the judiciary:

WILLIAM C. SPRUANCE: Mr. Chairman, I differ *in toto* with the gentleman from Dover (Mr. Saulsbury). I am in favor of an elective Judiciary, under such circumstances and limitations as would be likely to secure us a non-partisan Judiciary. But we are not concerned with that subject now, for there has been no report of the Judiciary Committee as yet.

I think that because any gentleman may be opposed to an elective Judiciary, it is no reason why he should not be in favor of making the Attorney-General elective. The Attorney-General's office is not a Judicial office. There is not a speck of Judicial character connected with his office that I know of, except to advise with the Governor and some other departments of the State on the law some times—and we do not always get sound law when we call for it that way.

The President of the Convention, my colleague from Wilmington (Mr. Biggs), has been Attorney-General, and I am sure that the vigor with which that gentleman performed the duties of his office—I would not say with 'blood upon his garments'—but the frame of mind, with which he did perform that office was not a Judicial frame of mind. I do not suppose he ever indicted a man that he thought ought not to be indicted—the grand jury indict him, however—or that he afterwards convicted the man under like circumstances. The Court and jury pass upon that.

He is not a Judicial officer at all, and we do not need to bring that matter up. He is an officer who may as well be elected by the people as any other officer in the State. He is elected in other States, and I think it will open this office up to the competition of the very ablest young members of the Bar in the State.

That office is valuable as familiarizing them with the practice throughout the State, etc.; if there was not any pay connected with the office, it would be a great boon for that reason alone.

II Debates and Proceedings of the Constitutional Convention of the State of Delaware, 382–383 (1958).

 If the nonjudicial character of his duties does not suffice to exclude the Attorney General from the jurisdictional purview of Article IV, § 37, clearly his elective status does. The Court on the Judiciary may exercise its power only with respect to persons "appointed by the Governor." As previously noted, this limitation is consistent with the obvious legislative intent that the Court on the Judiciary provide a mechanism for the censure, removal, or involuntary retirement of judges, whose lengthy terms of appointment insulate them from removal through the elective process. As an elected State officer, the Attorney General enjoys no such protection.

Further evidence of the statute's overreaching is its attempt to give the Court on the Judiciary authority over persons who occupy no office at all. While this case presents a charge against an incumbent officeholder, the use of the word "candidate" in the statute suggests a legislative intention to include persons who merely aspire to public office. To urge that the statute confers jurisdiction on the Court on the Judiciary to complaints against the Attorney General, because he might arguably be considered a "judicial officer," overlooks the facial intent of the statute—that such jurisdiction extend to *all* candidates for that office. No argument has been tendered, and none occurs to us, in support of the proposition that the Court on the Judiciary should exercise jurisdiction over those who occupy no public office.[8] Nor is there any assertion that merely because the candidates for Attorney General are generally lawyers, the Court on the Judiciary is an appropriate forum to investigate their alleged campaign derelictions

---

**8.** One need not be a lawyer to be a candidate for the office of Attorney General, since the Delaware constitution imposes no such qualification. Indeed, the Court takes judicial notice of the fact that nonlawyers have been candidates for that office in past general elections.

Although the Attorney General enjoys a degree of discretion in the exercise of his duties and may rule in an advisory fashion respecting the conduct of the Executive branch, he does not exercise the powers of a judge. The Delaware constitution merely provides for an Attorney General. It does not mention his duties, although these are assumed to be the duties exercised by that officer at common law. *Darling Apartment Co. v. Springer*, Del.Supr., 25 Del.Ch. 420, 22 A.2d 397, 405 (1941) (Rodney, J., concurring). Nor is there any mention of the functions or duties of that office in Article IV, the so-called Judicial Article, of the Delaware constitution, which defines the various entities authorized to exercise the "judicial power of this State." Del. Const. art. IV, § 1. Prior to the Constitution of 1897, and extending back into colonial times, that office had always been an appointive one responsible for performing the duties of "chief law officer" of the State. *Darling*, 22 A.2d at 408. Thus, as a matter of historical fact, the Attorney General in Delaware has functioned as part of the Executive rather than the Judicial branch of State Government.

Oberly relies upon decisions from other jurisdictions to buttress his argument that the Delaware Attorney General is a "judicial officer" within the meaning of Art. IV, § 37. *See State v. Ellis*, Ind.Supr., 184 Ind. 307, 112 N.E. 98, 100 (1916); *Tinder v. Music Operating*, Ind.Supr., 237 Ind. 33, 142 N.E.2d 610, 617 (1957); *Rothrock v. Walker*, Ark.Supr., 197 Ark. 846, 125 S.W.2d 459, 463 (1939); *Crawley v. Warren*, 7th Cir., 216 F.2d 74, 76 (1954).

These decisions, however, appear to use the term "judicial officer" in a broad, popular sense. Three of them speak of an Attorney General, though a zealous advocate, being a judicial officer in the sense of having discretion to vindicate the public interest through official acts. *Ellis*, 112 N.E. at 100; *Tinder*, 142 N.E.2d at 617; *Rothrock*, 125 S.W.2d at 463. *Ellis* and *Crawley* speak to the issue in the context of "judicial" immunity, noting that certain rules governing immunity of judges may be extended to cover prosecuting attorneys, especially as to official acts. 112 N.E. at 100;

216 F.2d at 75–76; *cf. Spring v. Constantino*, Conn.Supr., 362 A.2d 871, 874 (1975). *Ellis*, in particular, appears almost to equate "judicial officer" with "officer of the court." *See* 112 N.E. at 100.

At issue here, however, is the meaning of the term in its stricter, jurisdictional sense as used in Art. IV, § 37. In its legal sense, the term properly applies "only to an officer who determines causes between parties or renders decisions in a judicial capacity." *Black's Law Dictionary* 761 (5th ed. 1979); *see also Hitt v. State*, Miss.Supr., 182 Miss. 184, 181 So. 331, 333 (1938); *Commonwealth v. Wise*, Ky.App., 351 S.W.2d 491, 492–3 (1961). Moreover, this case does not involve official acts by an Attorney General taken to vindicate what he perceives to be the public interest, or the extent of claimed immunity for such actions. Instead, it concerns alleged campaign derelictions by a candidate whose status as incumbent Attorney General is fortuitous, and whose status as a candidate seeking reelection is no different from that of any other candidate. *Bartley v. Davis*, 519 A.2d at 669 (1986).

Finally, we note that while the General Assembly has the undoubted authority to create courts additional to those designated in the Constitution, as Article IV, § 1 expressly provides, the legislative purpose reflected in section 8012(a) is limited to conferring jurisdiction on a court already in existence. The General Assembly may not expand that jurisdiction by statute in a manner inconsistent with constitutional limits. To the extent that sections 8012(a) and (b) purport to do so they are flawed in concept and are nullities.

### III

If section 8012 is ineffective in its effort to provide a mechanism for the processing of complaints against Attorney General candidates through the Court on the Judiciary, the question next presented is whether that invalidated grant of jurisdiction negates subsection (c) of section 8012, which purports to provide for the appointment of a special prosecutor to represent the

State's interests in election law complaints involving Attorney General candidates. The parties jointly argue that this subsection is severable and we concur in that assessment.

As this Court ruled in *State v. Schorr*, Del.Supr., 65 A.2d 810, 822 (1949), if the part of a statute found to be unconstitutional is so connected with other parts that they are mutually dependent and complementary enough to justify the conclusion that the legislature intended them to stand or fall together, the entire legislative scheme fails. If, on the other hand, the severance of the invalid provision results in a residual component having separate purpose and independent legislative significance, the valid segment may stand. *Stiftel v. Malarkey*, Del.Supr., 384 A.2d 9, 17–18 (1977).

To a degree, section 8012 contemplates a sequence of events following the bringing of an election law complaint against an Attorney General candidate. Subsections (a) and (b), here invalidated, provide for an investigative and recommendatory function by the Court on the Judiciary, to be followed by reference to an appropriate enforcement authority and, if the subject of the complaint is a successful candidate for Attorney General, to the House of Representatives. The language of subsection (b) is less than clear. Its meaning is gained only through inference. Apparently the legislature intended to permit recommendations of the Court on the Judiciary to lead to criminal charges against any Attorney General candidate and, if a particular candidate who is the subject of an adverse finding and recommendation by the Court on the Judiciary has assumed or retained that office, reference to the House of Representatives for the possible initiation of impeachment, as provided by Article VI, § 1 of the Delaware constitution.[9] The total enforcement mechanism contemplated by section 8012 is not foreclosed, however, by the invalidation of the enforcement language of section 8012(b). The Superior Court has general jurisdiction over complaints arising under the Campaign Financing and Disclosure Act. 15 *Del.C.* § 8011(d). Any person may file a criminal complaint either in that Court or before a Justice of the Peace alleging a violation of the election laws by an Attorney General candidate. *See Superior Court Criminal Rule 3; Justices of the Peace Criminal Rule 3.*

■ The independent significance and viability of section 8012(c) becomes apparent upon the filing of a complaint, thereby implicating the criminal sanctions authorized by section 8011. The provision for the appointment of a special prosecutor to represent the State's interest in an action involving a candidate for Attorney General serves the salutary purpose of removing a personal conflict of interest if either the Attorney General, or a candidate opposing him, is the subject of the complaint. *See Bartley v. Davis*, 519 A.2d at 669. While the Attorney General might be required to disqualify himself as a matter of professional ethics if he were the subject of the complaint, the statute extends that disqualification to an action in which another candidate's conduct is in question. Moreover, if, as is possible under Delaware law, the incumbent Attorney General were not a lawyer, the special prosecutor provision of section 8012(c) would serve as a substitute ethical imperative.

■ We conclude, therefore, that subsection (c) of section 8012 is severable from the balance of that section deemed unconstitutional. But this declaration of viability does not present a basis for further action by this Court. Subsection (c) requires the appointment of a special prosecutor only where "an action before the courts of Delaware is initiated." Since this Court lacks original criminal jurisdiction over alleged violations of the Act, and since it is not alleged that any criminal complaint has been filed against the respondent, Oberly, there is no basis for this Court to exercise

---

**9.** Del. Const. art. VI, § 1 reads, in pertinent part:

Section 1. The House of Representatives shall have the sole power of impeaching but two-thirds of all members must concur in an impeachment.

\*　\*　\*　\*　\*　\*

its appointing authority under section 8012(c).

### IV

In sum, we conclude that subsections (a) and (b) of 15 *Del.C.* § 8012 are unconstitutional and void. We find the provisions of subsection (c) severable and valid, but conclude that the facts herein alleged do not provide a basis for this Court to exercise the authority therein conferred. Accordingly, this petition must be DISMISSED.