Larry **WILLIAMS**, Appellant (Defendant below),

v.

**STATE** of Indiana, Appellee (Plaintiff below).

No. 1280S443.

Supreme Court of Indiana.

Jan. 19, 1982.
Rehearing Denied March 26, 1982.

Jere I. Humphrey, Plymouth, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Larry Williams, was convicted by a jury of murder, Ind. Code § 35–42–1–1(1) (Burns 1979 Repl.), felony murder, Ind. Code § 35–42–1–1(2) (Burns 1979 Repl.), armed robbery, a class A felony, Ind. Code § 35–42–5–1 (Burns 1979 Repl.), conspiracy to commit armed robbery, a class A felony, Ind. Code § 35–41–5–2 (Burns 1979 Repl.), and habitual offender, Ind. Code § 35–50–2–8 (Burns 1979 Repl.). The jury recommended a sentence of death for the murder count, Ind. Code § 35–50–2–9 (Burns 1979 Repl.), and defendant was thereafter sentenced to death, ninety years, thirty years, thirty years, and thirty years respectively.

His direct appeal challenges the legality of the death sentence and presents the following issues:

1. Whether our death sentence statute violates any of several constitutional proscriptions of either the United States Constitution or the Indiana Constitution or was unconstitutionally applied in this case;

2. Whether the trial court erred in sentencing defendant as an habitual offender where this charge was based upon the same two underlying felonies as were used in a prior habitual offender conviction;

3. Whether the trial court erred in permitting defendant's wife to testify over a claim of privilege;

4. Whether the trial court erred in allowing the state to amend the death penalty request after the case had been filed; and

5. Whether the trial court erred in sentencing defendant on both the felony murder and armed robbery counts when the armed robbery was the felony involved in the felony murder.

A summary of the facts from the record shows that on April 13, 1979, the victim, Jesse Hubbard, failed to report for work at his place of employment in Plymouth, Indiana. One of Hubbard's co-workers, Richard Birchmeier, became concerned about Hubbard's uncharacteristic absence and went to Hubbard's house. He noticed that the front door was slightly ajar and then saw Hubbard lying on the floor with blood on his head. Birchmeier immediately called the police. Testimony at the trial established that Hubbard had died from a stab wound to the heart. There was also a basal skull fracture which would have been a fatal wound apart from the stab wound.

A witness for the state, Larry Perkins, testified that he had entered into a plea bargain with the state involving three murders, including the Hubbard murder, in exchange for his testimony. He stated that on the evening of April 12, 1979, he and defendant had agreed to blackmail Hubbard and went to his house for that purpose. Perkins testified that another friend, George Redman, was in on the plan and agreed to be an alibi witness for Perkins. At Hubbard's house, defendant, Perkins and Hubbard watched TV, drank beer and smoked pot for awhile. Then Perkins and defendant decided they should rob Hubbard, so Perkins hit Hubbard on the head with his pistol. Defendant stabbed Hubbard several times with a butcher knife, then hit him with a whiskey bottle and with a piece of pipe. Finally, Perkins and defendant tried to wipe off their fingerprints. They took Hubbard's billfold, the beer and the pot and went to defendant's mother's house to split the money.

I.

■ (A) The defendant presents several arguments to the effect that our death penalty statute, Ind. Code § 35–50–2–9 (Burns 1979 Repl.) is unconstitutional. We have clearly held that this statute is not unconstitutional *per se*, as being in derogation of either the Eighth Amendment to the Constitution of the United States or Article 1, Sec. 16 of the Constitution of Indiana. *Brewer v. State*, (1981) Ind., 417 N.E.2d 889; *Judy v. State*, (1981) Ind., 416 N.E.2d 95. We have found that the death penalty may be imposed if the circumstances of the

offense and the character of the offender both warrant. The procedural scheme set out in our statute limits the imposition of death sentences so as to insure that they will not be inflicted arbitrarily or capriciously. *Brewer v. State, supra.* This is in accord with the decisions and opinions of the United States Supreme Court. *Gregg v. Georgia,* (1976) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Proffitt v. Florida,* (1976) 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; *Jurek v. Texas,* (1976) 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929.

We have previously compared our statutory and procedural requirements under the death penalty statute with those found in the Florida and Georgia statutes which were upheld by the United States Supreme Court. We found that our present statute is very similar to the Florida statute and that our death sentencing procedures are consistent with and in full compliance with the requirements set forth by the Supreme Court in *Proffitt v. Florida, supra,* and *Gregg v. Georgia, supra.* Thus, our statute is not violative of the Eighth and Fourteenth Amendments to the United States Constitution. *Brewer v. State, supra.*

■ Defendant therefore focuses his constitutional attack in this case upon what he terms the uncontrolled discretion given to the prosecuting attorneys under our statute to determine who will or who will not be charged with the death penalty. He first contends that this uncontrolled discretion results in an arbitrary and capricious selection of those against whom a death penalty is charged and therefore is unconstitutional. We find no constitutional problems in this area. Prosecutors are traditionally given a wide discretionary power in our criminal justice system to select the persons who are to be prosecuted at any level and to plea bargain with them. This frequently results in less than maximum sentences for specific individuals. The United States Supreme Court has clearly stated that "Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." *Gregg v. Georgia, supra,* 428 U.S. at 199, 96 S.Ct. at 2937,

49 L.Ed.2d at 889. Similarly, we find nothing in the Constitution which prohibits prosecutorial discretion in charging the death penalty. Our statute has numerous provisions that protect each individual defendant from *receiving* an arbitrary or capricious sentence of death. The constitutional rights of our citizens are thus adequately protected.

■ Defendant further argues that the power to use the threat of the charge of the death penalty in the plea bargaining process is an unconstitutional burden upon his right to a jury trial under the Sixth and Fourteenth Amendments and upon his right against compelled self-incrimination under the Fifth and Fourteenth Amendments. He relies upon the rationale of *United States v. Jackson,* (1968) 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, where the Court held that the death sentence provided by the Federal Kidnapping Act was unconstitutional because under the provisions of the Act only those insisting upon a jury trial faced the possibility of a death penalty whereas those tried to the court after waiving a jury trial and those pleading guilty faced only a sentence of life imprisonment.

We find that no such impermissible burden is present under our statutory scheme since the death sentence may be imposed after a guilty plea or a waiver of jury trial as well as after a plea of not guilty followed by a jury trial. Ind. Code § 35–50–2–9 (Burns 1979 Repl.) provides in part:

"(d) If the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing; if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing."

Furthermore, the United States Supreme Court has specifically held that there is no *per se* rule against encouraging guilty pleas and that a state may encourage a guilty plea by offering substantial benefits in return for the plea. *Corbitt v. New Jersey,* (1978) 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466. The Court has recognized the benefits of efficiency and speedy dispositions that

plea bargaining offers, and has fully approved its use as long as it is accompanied by safeguards that insure full knowledge on the part of the defendant offering a guilty plea as to his rights, his consequent waiver of those rights, the crime to which he is pleading guilty and the maximum penalty or the extent to which he places himself at risk. *Bordenkircher v. Hayes,* (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604.

In *Brady v. United States,* (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, the Court ruled that a guilty plea is not "coerced" merely because a defendant escapes the possibility of a death sentence by pleading guilty. In so holding the court said:

"But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary. "A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained. In any event, it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far." 397 U.S. at 753, 90 S.Ct. at 1471, 25 L.Ed.2d at 759.

We find that no impermissible constitutional burden is placed on defendant's rights under our death penalty statute.

■ Defendant further argues that he was in fact penalized for the assertion of his rights since he received the death penalty but his two accomplices who entered guilty pleas received sentences of only 34 years and 54 years. We disagree. There is no evidence here that defendant was subjected to unwarranted charges. There was no constitutional impropriety in extending leniency to the accomplices in exchange for guilty pleas and denying that leniency to defendant. As the United States Supreme Court has said in *Corbitt v. New Jersey, supra* :

"The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas." 439 U.S. at 223, 99 S.Ct. at 499, 58 L.Ed.2d at 477.

As discussed above, a defendant who willingly enters a plea of guilty has extended a substantial benefit to the state and deserves to have a substantial benefit extended to him in return. Both this Court and the Federal Courts have recognized the state's legitimate interest in encouraging the entry of guilty pleas and in facilitating plea bargaining which is mutually beneficial to both a defendant and the state. *Bordenkircher v. Hayes, supra; Norris v. State,* (1979) Ind., 394 N.E.2d 144; *McMahan v. State,* (1978) 269 Ind. 566, 382 N.E.2d 154. We find no constitutional error due to the use of the death penalty statute in the plea bargaining process.

■ Defendant next argues that the death penalty statute does not provide for meaningful appellate review of death penalty cases. Although he bases this contention on several grounds, we find no merit to this argument. First, defendant argues that there is no meaningful appellate review since this Court does not review those cases in which the death penalty was *not* charged. Here, we need only note that our Constitutions, statutes and regulations do protect those who *are* charged with the death penalty so as to prevent any arbitrary or capricious imposition of this ultimate penalty. Our constitutional scheme seeks to protect those individuals who are charged with a crime and insures review on an individual basis, but it does not impose review on those decisions to grant specific individuals mercy when given at any level.

■ Next, defendant argues that our death penalty statute does not give specific guidance to the trial court and the jury as to how to weigh the aggravating and mitigating circumstances in determining the death penalty. As we found in *Judy v. State, supra,* the necessary standards and guidance are found by looking at our criminal statutes and procedural rules in their entirety. Indiana's general sentencing hearing statute requires, in all cases where there are aggravating circumstances present, that the sentencing judge include a written statement of the reasons for selecting the sentence he imposes. Ind. Code § 35–4.1–4–3 (Burns § 35–50–1A–3, 1979 Repl.). Our death penalty statute requires that the jury may recommend the death penalty only if it unanimously finds beyond a reasonable doubt that at least one of the enumerated aggravating circumstances does exist, and that the mitigating circumstances, if any, do not outweigh the aggravating circumstances. Ind. Code § 35–50–2–9(e) (Burns 1979 Repl.). The trial court, who then makes the final determination of the sentence to be imposed, must consider the jury's recommendation and must also base his decision on the same standards that the jury was required to consider. *Id.* Finally, every sentence of death is subject to automatic, expedited review by this Court. Ind. Code § 35–50–2–9(h) (Burns 1979 Repl.). This review is thorough and adequate since we have before us the entire record of the proceedings, including the complete record of the sentencing hearing and the trial court's written statement of the reasons for the sentence imposed. *Brewer v. State, supra; Judy v. State, supra.* This sentencing procedure gives clear and specific guidance to the sentencing authority and adequately protects each individual's constitutional rights.

■ Finally, defendant contends that there cannot be an adequate appellate review of his case by this Court since there are no specific guidelines in the statute to govern such review. We find that our rules do provide for an adequate and meaningful appellate review. Our rule for the appellate review of sentences states:

"Rule 2

"SCOPE OF REVIEW

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

"(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

This standard places the emphasis of review on the specific circumstances of each case and the nature of each individual defendant. Our review is facilitated by the written statement of the trial court's sentencing decision but also includes a thorough consideration of the facts presented by the entire record. The entire review procedure is adequate to assure that any decision to impose the death sentence is based upon reason and the specific offense and the character of the offender. The fact that defendant's two accomplices were given significantly less severe sentences as a result of plea bargains does not affect the reasonableness of defendant's own sentence. Defendant's sentence must be judged by the particular facts of his own case, not the facts accompanying his accomplices' cases.

■ Defendant next argues that since our death penalty statute gives the entire discretion to charge the death penalty to prosecuting attorneys, it improperly delegates the legislative authority of fixing the penalties for crimes to the executive branch of the government and also usurps the judicial function of imposing criminal penalties. There is no merit to this argument since the office of prosecuting attorney is a judicial office created by the Indiana Constitution, Art. 7, section 16. *State ex rel. Latham v. Spencer Circuit Court,* (1963) 244 Ind. 552, 194 N.E.2d 606; *State ex rel. Williams v. Ellis,* (1916) 184 Ind. 307, 112 N.E. 98.

■ The duties of the prosecutor and the manner of commencing prosecution are set

out by statute and thus are consistent throughout the entire state. Ind. Code § 33–14–1–3, § 33–14–1–4 (Burns 1975 Repl.) and Ind. Code § 35–3.1–1–1 (Burns 1979 Repl.). The prosecuting attorney's duties are concerned with representing the state of Indiana as an attorney at law and all criminal prosecutions are carried on in the name of the state of Indiana. Indiana Constitution, Article 7, Section 18, *State ex rel. Indiana State Bar Assn. v. Moritz,* (1963) 244 Ind. 156, 191 N.E.2d 21. The preservation of proper standards of conduct by attorneys and prosecuting attorneys is a subject for the courts, which are charged with the control of the judicial branch of government. *State ex rel. Latham v. Spencer Circuit Court, supra.* Thus, it is clear that any discretionary power that is vested in the prosecuting attorneys under the death penalty statute is exercised under the control of the courts of this state. Therefore, we find that the statute does not violate those sections of our Constitution prohibiting laws dependent upon authority other than provided by the Constitution, prohibiting the suspension of the operation of laws, or prohibiting the promulgation of local or special laws for the punishment of crimes. Indiana Constitution, Article 1, §§ 25, 26, Article 4, § 22.

■ Defendant's final specification of constitutional error is that the death penalty statute violates Article 1, Section 18 of the Indiana Constitution which requires our penal code to be founded on principles of reformation and not of vindictive justice. However, this provision has been consistently interpreted by this Court not to prohibit capital punishment. We have found that this section is an admonition to the legislative branch of the state government and is addressed to the public policy which the legislature must follow in formulating the penal code. It applies to the penal laws as a system to insure that these laws are framed upon the theory of reformation as well as the protection of society. *Brewer v. State, supra; French v. State,* (1977) 266 Ind. 276, 362 N.E.2d 834; *Denson v. State,* (1975) 263 Ind. 315, 330 N.E.2d 734; *Adams v. State,* (1971) 259 Ind. 64, 271 N.E.2d 425;

*Kistler v. State,* (1921) 190 Ind. 149, 129 N.E. 625. We find no constitutional infirmities in the death penalty statute.

■ (B) In reviewing the imposition of the death penalty in the instant case, we find that all of the statutory procedures were followed in the trial of this defendant. During the guilt determination phase of the proceedings, the jury found beyond a reasonable doubt that the defendant intentionally killed the victim, robbed the victim and had conspired with another individual to commit this robbery. A separate sentencing hearing was held following the guilt determination. At this time, the state introduced evidence that defendant had been convicted of another murder in Fulton County, Indiana. The testimony presented in the first stage of the trial which showed that defendant had committed the instant murder while in perpetration of a felony was also incorporated by reference in this stage of the proceedings. The trial judge instructed the members of the jury as to their duties in determining whether to recommend the death penalty. They were fully instructed as to all the aggravating and mitigating circumstances they were to consider. Defendant was given an opportunity to present any evidence he wished at that time, but he presented no evidence. Both sides were offered an opportunity to argue to the jury concerning the question of the appropriateness of imposing the death penalty in this case. By a written, unanimous verdict, the jury returned a recommendation that defendant be sentenced to death.

The trial judge then considered all the evidence in the case, including the jury's recommendation and the aggravating and mitigating circumstances presented before he held a final sentencing hearing. The judge also considered the information in the presentence report filed by the probation officer, which showed the lengthy criminal history of the defendant even though he was only twenty-two years old. At the final sentencing hearing, both parties again had an opportunity to present evidence to the judge. The state presented no new

evidence; defendant pointed out certain errors in the presentence report but presented no other evidence. The trial judge then sentenced defendant and made his findings in writing in the record stating therein his reasons for fixing the death penalty.[1]

We have reviewed those findings and reasons along with the evidence in the case and find that the record clearly supports the conclusion that the imposition of the death sentence was determined by the nature of the offense and the character of the offender. Two of the statutory aggravating circumstances were clearly proved beyond a reasonable doubt. The only evidence of any possible mitigating circumstance was testimony that defendant was smoking marijuana and drinking beer with the victim prior to committing the crimes. The trial judge found this had no effect in outweighing the aggravating circumstances, however, since defendant had devised an intentional scheme of robbery and blackmail before going to the victim's house.

We find that the trial court in all respects properly followed the required procedures

1. The trial court's written findings of fact were not included in the original transcript received by this Court. Pursuant to our order, the court has now sent to us his written findings of fact upon which the sentence of death was based and they are now part of the record.

"In accordance with the order of the Supreme Court of Indiana dated the 27th day of May, 1981, under Cause No. 1280–S–443, the court now sets forth in writing its specific findings upon which the sentence of death was based as follows:

"(1) The defendant, Larry Williams, and the co-defendant, Larry Perkins, drove to the decedent's residence with a calculated plan to get some money from the decedent.

"(2) The co-defendant, Larry Perkins, had in his possession a 22-caliber revolver prior to entering the decedent's residence; but during the course of the killing the defendant gained possession of the weapon.

"(3) The co-defendant, Larry Perkins, dropped the defendant off at the decedent's residence and, while the defendant was inside the house, he smoked marijuana while the decedent was lying on the couch.

"(4) There came a time when the co-defendant, Larry Perkins, was admitted into the decedent's residence by the defendant, Larry Williams, and eventually they planned to and did knock the decedent out while he was lying on the couch.

"(5) The co-defendant, Larry Perkins, struck the first blow to the side of the decedent's face, which knocked him off the couch and onto the floor; and then the defendant, Larry Williams, went to the kitchen and returned with a knife, stabbed the decedent with the knife on several occasions while he was lying on the floor, and then attempted to slit the decedent's throat.

"(6) The defendant then secured a pipe and, when the decedent would start to move or attempt to get up from the floor, the defendant would strike the decedent with the pipe and he would fall back to the floor.

"(7) The defendant also grabbed a whiskey bottle and, while the decedent was lying on the floor, proceeded to hit the decedent on the head with the whiskey bottle.

"(8) While the defendant was engaged in this activity, he continued to shout at the co-defendant, Larry Perkins, to shoot the decedent.

"(9) The circumstances became such that the co-defendant could not stand the sight of this brutal attack and went into the bathroom.

"(10) During the stabbing by the defendant, he took the decedent's wallet out of his back pocket and there was an amount of money in the wallet which the defendant removed and part of which he gave to the co-defendant, Larry Perkins.

"(11) The defendant was convicted of another murder in the Fulton Circuit Court on May 9, 1980.

"The only possible mitigating circumstances which the court has given any thought to is the fact that the defendant was smoking marijuana and drinking beer while at the decedent's residence prior to committing the crime. This carried no weight with the court, however, since the scheme had been devised by the defendant and co-defendant to rob the decedent prior to starting out on this adventure.

"The reason for the imposition of the death penalty is that the court feels that any lesser sentence would depreciate the seriousness of the crime; and the court feels that the jury has expressed, on behalf of our society, a moral concern about crimes committed in our society which we consider to be atrocious crimes, and that this was a crime so heinous that the court feels that the jury expressed the belief that the only appropriate response for our society to make to such a crime is 'to fight fire with fire.' "

Although the judge's final paragraph is phrased in moral, conclusionary terms rather than strict legal language, his entire statement does set out the specific details necessary to show that the aggravating and mitigating circumstances were carefully considered and that the sentence was not arbitrarily or capriciously imposed.

in imposing the sentence of death. There was ample evidence in the record to support the trial court's determination that two aggravating circumstances were proved beyond a reasonable doubt and that no mitigating circumstances existed which outweighed the aggravating circumstances. An examination of the entire record in this case clearly supports the conclusion that the imposition of the death penalty was determined by the nature of the offense and the character of the defendant. This consideration and our finding that the trial court carefully complied with the proper procedures supports our conclusion that the sentence of death recommended by the jury and imposed by the trial court was not arbitrarily or capriciously arrived at, and is not manifestly unreasonable.

## II.

Defendant next argues that it was error for the trial court to sentence him under the habitual offender count since he had previously been sentenced as an habitual offender at a prior trial on an unrelated murder wherein the state alleged and proved the same two underlying felonies as were used in the instant trial. This issue has clearly been decided adversely to defendant in *Baker v. State*, (1981) Ind., 425 N.E.2d 98.

We have consistently emphasized the unique status of the habitual offender statute. This statute has historically provided for greater punishment than would ordinarily be imposed upon the substantive crime charged. The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. *Comstock v. State*, (1980) Ind., 406 N.E.2d 1164; *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Wise v. State*, (1980) Ind., 400 N.E.2d 114; *Norris v. State*, (1980) Ind., 394 N.E.2d 144. Since the additional punishment is imposed for each new crime and not for crimes for which the defendant has already been convicted and punished, prior convictions used to establish the fact of habitual criminality at one trial can be used again after a subsequent felony conviction. *Baker v. State, supra; Hall v. State, supra.* There was no error in sentencing defendant on the habitual offender count.

## III.

Defendant next contends that certain testimony of his wife was erroneously admitted over an objection that it was a privileged communication between husband and wife. At trial, Sherri Williams, defendant's wife, was called as a witness by the state and gave the following testimony about a telephone call defendant received from Hubbard on the afternoon of April 12, 1979:

Q. [Prosecutor] "Did Larry Initiate this phone conversation or did someone call him?"

A. [Sherri Williams] "Someone called him."

Q. "And did he, in fact, talk to this person on the phone?"

A. "Yes, he did."

Q. "And what did he say to that person on the phone?"

MR. HUMPHREY: "I'll object to the privilege."

COURT: "Objection overruled, you may answer."

Q. "What did he say to that person on the phone?"

A. "Ah, I didn't hear the whole conversation. All that I heard was that him and Larry Perkins would be over later."

The trial court correctly admitted this testimony as the conversation was with a third person and was not a privileged communication between husband and wife which would be protected under Ind.Code § 34–1–14–5(6) (Burns 1973 Repl.).

Privileged communications between husband and wife have been restricted in application to confidential communications and information gained by reason of the marital relationship. *Teague v. State*, (1978) 269 Ind. 103, 379 N.E.2d 418; *Resnover v. State*, (1978) 267 Ind. 597, 372 N.E.2d 457. Here, the telephone call was initiated by the victim, Hubbard. The communication was in-

tended for Hubbard and was not a confidential communication between husband and wife.

## IV.

Defendant next contends that it was error for the trial court to allow the state to amend the indictment for the death penalty approximately one month prior to the trial. The original request for the death penalty, filed on January 30, 1980, listed the killing while in the course of armed robbery as the aggravating circumstance necessary to support the imposition of the death penalty. Subsequently, on June 6, 1980, an amended information was filed alleging the additional aggravating circumstance of a prior murder conviction. The conviction date for this unrelated murder was May 9, 1980.

It is well settled that a prosecutor may amend an indictment or information at any time, as long as the defendant is accorded an adequate opportunity to prepare his defense commensurate with such changes. Ind. Code § 35–3.1–1–5 (Burns 1975 Repl.); *Gilmore v. State*, (1981) Ind., 415 N.E.2d 70; *Highsaw v. State*, (1978) 269 Ind. 458, 381 N.E.2d 470. In this case, defendant has not shown that the addition of the second aggravating circumstance resulted in any prejudice to his substantial rights. There was no substantial change to the state's theory of the case and defendant did have an adequate opportunity to prepare his defense to this additional allegation. The trial court did not err in permitting the indictment to be amended.

## V.

Defendant finally contends that it was error for the trial court to sentence him for both the felony murder and the armed robbery since the felony murder arose from a killing in the commission of the armed robbery. This contention is correct, but we also find another related error in the sentencing which we must review as

---

**2.** We note that the sentence of ninety years which was imposed upon the felony murder charge is not a valid sentence under our present statute. Ind. Code § 35–50–2–3 (Burns

fundamental error. In this case the charged offenses of murder and felony murder arose out of the homicide of one individual. Therefore, the trial court could not impose a sentence on both counts of murder. *Pointon v. State*, (1980) Ind., 408 N.E.2d 1255; *Yates v. State*, (1978) 267 Ind. 604, 372 N.E.2d 461; *Holland v. State*, (1976) 265 Ind. 216, 352 N.E.2d 752. We remand this cause with instructions to vacate the sentence on the felony murder charge.[2] Since the sentence on the felony murder charge must be vacated, the sentence on the armed robbery charge is correct.

We find no reversible error with respect to the guilt determination or the death sentence determination. The findings and reasons of the trial court are a part of the record. We have reviewed the evidence in detail and find that there is a rational basis under the provisions of Ind. Code § 35–50–2–9 (Burns 1979 Repl.) for the sentence imposed. The sentence is not manifestly unreasonable in light of the offense and the character of the offender.

This cause is remanded to the trial court with instructions to vacate the sentence on the felony murder charge. The judgment of the trial court is otherwise in all things affirmed. The cause is further remanded to the trial court for the purpose of fixing a date for the death sentence to be carried out.

GIVAN, C. J., and PIVARNIK, J., concur.

DeBRULER, J., concurs and dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, concurring and dissenting.

The mandatory death penalty for murder has been rejected as violative of the Eighth Amendment. In *Woodson v. North Carolina*, (1976) 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944, it was held that:

---

1979 Repl.). If this sentence were not vacated, the trial court would be instructed to correct the sentence to conform with the statute.

"[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment, see *Trop v. Dulles*, 356 U.S., at 100, 78 S.Ct. at 597 (plurality opinion), requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." 428 U.S. at 304; 96 S.Ct. at 2991.

Under our death sentencing statute the constitutional mandate that the character and record of the individual offender be considered by the sentencing judge is to be carried out in the search for and evaluation of mitigating circumstances. Indiana Code § 35–50–2–9(c) governing this part of the sentencing process states:

"(c) The mitigating circumstances that may be considered under this section are as follows:

(1) The defendant has no significant history of prior criminal conduct.

(2) The defendant was under the influence of extreme mental or emotional disturbance when he committed the murder.

(3) The victim was a participant in, or consented to, the defendant's conduct.

(4) The defendant was an accomplice in a murder committed by another person, and the defendant's participation was relatively minor.

(5) The defendant acted under the substantial domination of another person.

(6) The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental disease or defect or of intoxication.

(7) Any other circumstances appropriate for consideration."

This part of the sentencing statute must be construed to encompass the constitutional mandate that the character and record of the individual offender be considered, and it must be emphasized and repeated that this part of the process does not involve a search for an excuse or justification for criminal conduct, but for knowledge of the person to the end that a judgment be made upon the question of whether the offender is the sort of person who should be put to death rather than put in jail.

The judge's order before us, and quoted in full in the majority opinion, falls short of satisfying this constitutional mandate and the mandate of this Court in *Judy v. State*, (1980) Ind., 416 N.E.2d 95, that an express written and independent analysis of the defendant's character and record be made. That part of the order which reflects the judge's efforts in satisfaction of this mandate is as follows:

"The only possible mitigating circumstance which the court has given any thought to is the fact that the defendant was smoking marijuana and drinking beer while at the decedent's residence prior to committing the crime. This carried no weight with the court, however, since the scheme had been devised by the defendant and co-defendant to rob the decedent prior to starting out on this adventure.

The reason for the imposition of the death penalty is that the court feels that any lesser sentence would depreciate the seriousness of the crime; and the court feels that the jury has expressed, on behalf of our society, a moral concern about crimes committed in our society which we consider to be atrocious crimes, and that this was a crime so heinous that the court feels that the jury expressed the belief that the only appropriate response for our society to make to such a crime is 'to fight fire with fire.'"

There is little or no consideration given in this writing to appellant's character and record. To illustrate its incompleteness in this regard, one need only compare this order with the one considered and quoted in full in *Brewer v. State*, (1981) Ind., 417 N.E.2d 889, written by Judge Clement of the Lake Superior Court, Criminal division which utilizes several pages in disclosing the court's consideration of the defendant's background. Further evidence of the incompleteness is to be gleaned from the presentence report which reveals the following and more about appellant:

1. He was twenty-one years old at the time of the killing.
2. Stealing has been his way of life since he was ten years old.
3. Using and selling contraband drugs has been his way of life since he dropped out of high school as a freshman.
4. His younger brothers are in trouble with the law.
5. He, his mother, and seven brothers and sister were abandoned by the father when appellant was eleven years old. They became destitute and lived in squalor on welfare payments.
6. Prior to abandoning the family entirely, his father would leave the family without explanation for several weeks at a time.

A life history of this sort does not necessitate the rejection of the penalty of death. But it does provide information which cannot constitutionally be ignored in giving due regard to the offender's character, record, and amenability to rehabilitation. It is a mitigating circumstance, for the purpose of deciding between death and imprisonment, that the offender began to demonstrate the capacity to form serious criminal intent at the age of ten or eleven. The ten-or eleven-year-old who develops such a pattern of behavior, does so through the influence of others upon whom he is dependent or because of emotional disturbance, and without making the kind of choice warranting the severest moral condemnation.

Finally, I read the court's final paragraph in the order, above, to apply a standard not applicable in making the choice of death, i.e., that "any lesser sentence would depreciate the seriousness of the crime"; and to report that his own feelings comport with those of the jurors, i.e., that the penalty of death is required here in order for society "to fight fire with fire". This part of the court's order is central to his decision, as he repeated in his second order following remand by this Court. It is no more nor less than an application of *lex talionis*, forbidden by the policy of the law in the sentencing statute, and contrary to the requirement of Art. I, § 18, of the Indiana Constitution that "The penal code shall be founded on the principles of reformation, and not of vindictive justice." *Judy v. State, supra* (DeBruler, J., dissenting). See also Kanter, *Dealing with Death, The Constitutionality of Capital Punishment in Oregon,* 16 Williamette L.Rev. 1 (Winter, 1979). It reflects the unconstitutional purpose to secure retribution and vengeance for appellant's crime.

As the record fails to disclose that the judgment of the court to impose the death penalty was arrived at after giving due regard to the offender's character, record, and amenability to rehabilitation, and as the record does disclose that the judgment was arrived at upon consideration of impermissible matter, I would not permit such judgment to stand.

This case should be remanded to the trial court to impose a determinate sentence on the murder count.

PRENTICE, J., concurs.