**Robert L. RUSSELL, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1281S364.**

Supreme Court of Indiana.

Aug. 12, 1982.

Christopher C. Zoeller, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Robert L. Russell, Jr., was convicted by a jury of murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.), battery, a class C felony, Ind.Code § 35–42–2–1 (Burns 1979 Repl.), and found to be an habitual offender. Ind.Code § 35–50–2–8 (Burns 1982 Supp.). He was sentenced to concurrent terms of thirty and five years for his respective crimes; the sentence was enhanced by an additional thirty years for his habitual offender status. In his direct appeal, he presents the following issues for our review:

1. Whether the evidence was sufficient to support the jury's conclusion that defendant possessed the intent to murder the victim; and

2. Whether defendant's habitual offender conviction must be reversed as a result of prosecutorial misconduct in the final argument phase of the proceedings.

The record reveals that on New Year's Eve of 1979, Donald Coleman and Dennis

Hart suffered gunshot wounds while attending a party at the Hart residence, located at 4337 Guilford Avenue in Indianapolis, Indiana. Coleman died of the wounds, which several witnesses testified were inflicted by the defendant.

## I.

Defendant maintains the evidence was not sufficient to sustain the jury's conclusion that at the time of the shooting, he possessed the intent requisite to the commission of murder. Ind.Code § 35–42–1–1, *supra.* He asserts that the trial court erred in overruling his motion for a directed verdict at the close of the state's case-in-chief; likewise, he maintains the court again erred by overruling his motion when he renewed it at the close of all evidence. Here, he consolidates his argument concerning the denial of the motions.

▮▮▮ Likewise, we treat the issues as one. Technically, of course, defendant waived his right to challenge the court's denial of his motion for a directed verdict at the close of the state's case when thereafter he proceeded to present evidence on his own behalf. *Miller v. State,* (1981) Ind., 417 N.E.2d 339; *Love v. State,* (1980) Ind., 400 N.E.2d 1371. We also note that a trial court's refusal to direct a verdict at the close of the state's case-in-chief is proper if there is sufficient evidence to support the fact-finder's verdict. Ind.R.Tr.P. 50(A)(6); *Catenacci v. State,* (1982) Ind., 436 N.E.2d 1134; *Scott v. State,* (1980) Ind.App., 409 N.E.2d 1184.

▮▮▮ In order to avoid an adverse directed verdict, it is necessary only that the state establish a *prima facie* case; a directed verdict is properly granted only if there is an absence of evidence on an essential element of the crime, or where the evidence is not in conflict and gives rise to inferences only in favor of the accused. *Page v. State,* (1980) Ind., 410 N.E.2d 1304; *Mendez v. State,* (1977) 267 Ind. 67, 367 N.E.2d 1081.

In our review of rulings by the trial court on motions for a directed verdict, we do not weigh the evidence or judge the credibility of witnesses. Rather, we examine only that evidence most favorable to the court's ruling, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is evidence from which a jury could conclude the defendant committed the elements of the crime charged, the court's ruling will not be disturbed. *Page v. State, supra; Collins v. State* (1981) Ind., 415 N.E.2d 46.

▮▮▮ Defendant maintains the evidence inalterably reveals that although he fired the shots which struck the victims, he acted in self-defense. As a matter of law, his argument fails.

The record reveals that the shooting was precipitated by a quarrel between defendant and Ben Collier, a guest at the party. Collier testified he accidentally bumped defendant near the dance floor; although he repeatedly apologized to defendant, the latter refused to accept the apology. An argument ensued. According to several witnesses, the defendant suddenly revealed a handgun; several persons then gathered around defendant and backed him onto the porch, where they requested that he leave the party.

According to the record, a discussion ensued for approximately five to ten minutes on the front porch between defendant and Douglas Hart, who testified that defendant calmed down and was about to leave when other guests—among them the two victims—joined them on the porch. Defendant again became irritated, admonished the group of four to five people to "Don't crowd me," and suddenly began shooting. Witnesses testified that the crowd on the porch had not provoked the shooting by any particular verbal or physical act; several eyewitnesses identified defendant as the man who did the shooting.

The instant facts are similar to those present in *Brown v. State,* (1978) Ind., 383 N.E.2d 1029, where this Court rejected defendant's assertion that the evidence was insufficient to establish his intent to murder. We stated:

"Appellant appeared in the middle of an argument with the decedent, armed with

a lethal weapon, a sawed-off shotgun. He cocked this weapon and pointed it at the woman, and the gun discharged. Notwithstanding appellant's protests of innocent purpose, the jury could draw upon its collective experience of human affairs and find that the leveling of a cocked shotgun at the chest of another human being manifests an intention to kill that person, particularly when these acts occur in the midst of a personal argument." *Id.*, 383 N.E.2d at 1030.

*See also, England v. State*, (1978) Ind., 383 N.E.2d 320; *Berry v. State*, (1978) 268 Ind. 432, 376 N.E.2d 808. We have often recognized that malice and intent may be inferred from the use of a deadly weapon in a manner likely to cause death. *Hemphill v. State*, (1979) Ind., 387 N.E.2d 1324; *Harris v. State*, (1978) 269 Ind. 672, 382 N.E.2d 913.

The state thus satisfied its burden to establish a *prima facie* case in support of the murder charge. The trial court properly submitted the question of defendant's culpability to the jury. While the jury might have found otherwise, the evidence was sufficient to sustain its verdict that defendant was guilty of murder. *Brown v. State, supra; England v. State, supra.* There was no error here.

## II.

Defendant also argues that the judgment and sentencing entered on the habitual offender count must be reversed as a result of prosecutorial misconduct which occurred during that phase of the bifurcated proceedings. He maintains he was prejudiced by remarks made by the deputy prosecutor during final argument. The relevant portion of the record reads:

[Deputy Prosecutor's final argument]: "This man is forty eight years old. Second killing in his life. You saw Mrs. Coleman in the Courtroom, did you ever think about Jack Gambel's family? Did you ever think about the time and expense and money it cost to go to trial? Mr. ZOELLER [Defense Counsel]: "Objection, Your Honor. I would respectfully request that the Court admonish the jury to disregard the comments of prosecutor. The Defendant is not to be placed in jeopardy for having put the State through the cost of a trial, it is a constitutional right."

THE COURT: "I think counsel is correct, Mr. Whitney, I know you are an excellent lawyer and I know you get carried away in your enthusiasm but I think this being a democratic society, no matter what it costs you have to give every person a trial, you don't want to punish them for that, so I will admonish the jury to disregard those comments."

MR. WHITNEY: "Thank you, Your Honor, and I'm sorry for an excesses [sic]. What I'm talking about ladies and gentlemen is the legislature said, we have to be responsible to the citizens of the state, when a person is causing expense, harm, danger, anguish and death, he's got to be taken away. Now, under the law in Indiana it could have been because of a prior murder conviction or manslaughter conviction could have been a capital offense charged, meaning the electric chair—"

MR. ZOELLER: "Objection, Your Honor, that is a misstatement of the law, Your Honor, voluntary manslaughter never provided a basis for asking for the death penalty under this State's law."

The trial court then excused the jury and the defendant moved for a mistrial. After the merits of defendant's objection and mistrial motion had been debated, the trial court recalled the jury and admonished its members to disregard the deputy prosecutor's remark concerning what charges the state "could have brought" against defendant:

THE COURT: "Ladies and gentlemen of the jury, right before you went out, Mr. Whitney, in his closing statement indicated to you that the State of Indiana could have brought a capital charge against the Defendant and asked for the death penalty. The Court does not find that to be a correct interpretation of the law. I'd like for you and admonish you to erase that from your minds and make that no part of your judgment in con-

sidering this matter once I submit it to you."

We agree with the trial court that the prosecutor's remarks were improper and warranted an admonishment to the jury.

Vested in the public office of the prosecutor is discretion to charge a suspect with the commission of any crime appropriate to the facts. Regardless of whether defendant might have been charged with a capital offense, that option had been foresaken by the state. It was not appropriate then to suggest that an habitual offender sentence should be attached to defendant because he might have faced more severe punishment; that was a matter outside the scope of the issues and evidence before the jury. *Washington v. State*, (1979) Ind., 390 N.E.2d 983; *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244.

The state argues, however, that defendant has failed to establish he was placed in grave peril by the remark so as to warrant a mistrial; it maintains the admonishment served to cure any prejudice to the defendant. *See generally, Tinnin v. State,* (1981) Ind., 416 N.E.2d 116. Defendant maintains, however, that the admonishment was inadequate in view of the fact that the prosecutor's remark followed immediately on the heels of the prosecutor's improper reference to the costs involved in prosecuting the defendant.

It is true that the prejudicial effect of an isolated improper remark is aggravated by repeated instances of misconduct; if the cumulative impact of the remarks improperly prejudices the defendant, reversal may result. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409. That is not the case here, however.

The probable persuasive effect on the jury's deliberations regarding defendant's habitual offender status does not appear so grave as to warrant a new trial. Defendant's prior convictions were proved via the submission of certified documents establishing the facts of his prior offenses. Coupled with this objective proof of defendant's prior criminal record was the court's unequivo-

cal declaration that the deputy prosecutor had misinterpreted the law and that his statement should be disregarded. The trial court did not abuse its discretion in overruling the mistrial motion. *Maldonado v. State, supra; compare, Dean v. State,* (1982) Ind., 433 N.E.2d 1172; *Flynn v. State,* (1978) Ind.App., 379 N.E.2d 548. There was no error here.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.