Robert Michael GAJDOS, Jr., Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 383S81.

Supreme Court of Indiana.

April 30, 1984.

Ellen S. Podgor, Nicholls & Podgor, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Robert Michael Gajdos, was convicted of voluntary manslaughter, a Class B felony, Ind.Code § 35–42–1–3 (Burns 1979 Repl.), and was sentenced to twenty years' imprisonment. In this direct appeal the defendant raised eleven issues, which we consolidated into six:

1. Whether the evidence was sufficient to sustain the verdict;

2. Whether the trial court erred in admitting letters written by the defendant;

3. Whether the trial court erred in allowing a witness to answer questions concerning the arrest of the defendant;

4. Whether the defendant was deprived of a constitutional right to a speedy appeal;

5. Whether the defendant's trial counsel was ineffective; and

6. Whether the defendant was properly sentenced to a twenty-year term.

The facts most favorable to the state show that the defendant and an accomplice, Donald Phelps, were charged with the murder of Jeffrey LaValle. On May 15, 1979, the defendant and Phelps had been driving in the Hammond area when they encountered LaValle. The three decided to go to LaValle's apartment to drink beer. While there, LaValle allegedly made sexual advances toward the defendant and Phelps. The defendant left to go to the rest room, and while gone he heard loud noises coming from the room where LaValle and Phelps were located. The defendant returned from the rest room to find the two fighting. The defendant kicked LaValle repeatedly in the chest and head. The defendant later told a friend that he and Phelps hit LaValle with a frying pan. Subsequent investigation established that LaValle died of a massive skull fracture. The police recovered the frying pan, a large piece of driftwood with hair and blood on it, and a sledge hammer which also had blood on it.

The evidence also showed that the defendant returned to the victim's apartment and took an album collection. The defendant and Phelps then went to a friend's house. The victim's body was eventually found by the victim's brother. The apartment appeared to have been ransacked. The defendant was arrested at his home and was charged with murder on June 5, 1979.

I.

The defendant asserts that the evidence was insufficient to support the verdict. In addition, he contends the trial court erred in denying the defendant's mo-

tion for a directed verdict. However, since the defendant proceeded to present evidence on his own behalf after the close of the state's case, he has waived his right to challenge the denial of his motion for a directed verdict. *Russell v. State*, (1982) Ind., 438 N.E.2d 741; *Miller v. State*, (1981) Ind., 417 N.E.2d 339. Nevertheless, we will treat the issues as one and discuss the matter in the context of a sufficiency of evidence question.

■ Under our standard of review we may neither weigh the evidence nor judge the credibility of witnesses. We look at the evidence most favorable to the state and all reasonable inferences drawn therefrom to determine whether there is substantial evidence of probative value to support the conclusion of the trier of fact. *Walker v. State*, (1982) Ind., 442 N.E.2d 696; *Fielden v. State*, (1982) Ind., 437 N.E.2d 986.

■ The defendant argues that the state failed to establish that he acted intentionally or knowingly, since there was some evidence that the defendant had been drinking on the day LaValle was killed. At the time of this trial our statute on intoxication permitted voluntary intoxication as a defense to the extent it negated specific intent. Ind.Code § 35–41–3–5(b) (Burns 1979 Repl.). Whether the defendant possessed the requisite intent, despite a claim of intoxication, is a question for the trier of fact, *Fielden v. State; Greider v. State*, (1979) 270 Ind. 281, 385 N.E.2d 424, and the burden of proof on intoxication rests with the defendant. *Fielden v. State; Dobrzykowski v. State*, (1978) 269 Ind. 604, 382 N.E.2d 170.

■ Evidence in this case showed that, on the day the victim was killed, the defendant had been drinking. Lori Beverlin, the defendant's girlfriend, testified that the defendant told her he had drunk four cans of beer as well as almost a quart of Southern Comfort. Another witness also testified that the defendant told him he had been drinking prior to the incident. Other evidence, however, refuted the defendant's claim that he lacked specific intent because

he was intoxicated. One witness that talked with the defendant on the day of the killing testified that the defendant did not appear drunk and that his speech was not slurred. Another witness testified that the defendant bragged that "we put the frying pan over the back of his head and that the frying pan cracked right down the middle and it was really neat." Other testimony showed that the defendant had enough presence of mind to return to the crime scene shortly after the killing in order to take the victim's record collection. The evidence in this case merely established that the defendant had been drinking; it did not establish that the defendant lacked the necessary intent. Therefore, there was sufficient probative evidence to support the jury's verdict, and we cannot now reverse.

## II.

The defendant contends that the trial court erred in admitting state's exhibits 29 through 59. All of these exhibits were letters written by the defendant to Lori Beverlin while the defendant was in jail. The defendant claims the admission of these letters violated the Fourth and Fifth Amendments to the United States Constitution. In addition, the defendant asserts the letters contained privileged and confidential communications and that his right of privacy was violated.

■ The defendant alleges that the police illegally seized the letters introduced as state's exhibits 29 through 59. The state has countered by asserting in its brief that the defendant lacked standing to object since the letters had been received by Beverlin. We note, however, that the question of standing presumes there was an illegal search. Nothing in the evidence introduced at trial established a violation of the Fourth Amendment. These letters were apparently turned over to the police by Beverlin's mother. As such, there would have been no official action necessitating a warrant since

"Private persons acting solely on their own and for whatever purpose may conduct a search and seizure and turn the

fruits over to the authorities, and the authorities may initiate a prosecution on that evidence. The justifications for this rule are twofold. First, the Fourth Amendment was historically directed at governmental law enforcement conduct. Second, the exclusionary rule is directed at governmental law enforcement misconduct and the exclusionary rule would serve no useful purpose as to private persons."

*Hall, Search and Seizure* § 3:4 (1982). *See Torres v. State,* (1982) Ind., 442 N.E.2d 1021. It is still possible that a search by a private citizen would violate the Fourth Amendment if law enforcement agents encouraged or forced the citizen to conduct the search. *Raymond v. Superior Court of Sacramento County,* (1971) 19 Cal. App.3d 321, 96 Cal.Rptr. 678. In such a case the private citizen becomes an agent of the police. The defendant alleges that the mother was, in essence, an agent for the police, since she allegedly was forced to turn over the letters because of threats by the police that Beverlin would be charged as an accomplice if the letters were not surrendered. The only "evidence" offered to establish this were statements by the defendant's counsel made during the motion to suppress. Unsworn statements by counsel are not evidence. Therefore, we find that there was no evidence that Beverlin's mother acted as an agent of the police and that there was no evidence that the police themselves conducted an illegal search. Accordingly, the defendant has failed to show a violation of the Fourth Amendment.

 The defendant also alleges the introduction of these letters violated the Fifth Amendment, since many of the letters contained incriminating statements. However, it is established that the Fifth Amendment privilege may be invoked "only when the actual preparation of the documents or the making of the written declarations which they contain, has been compelled." *Fagan v. United States,* (5th Cir.1977) 545 F.2d 1005, 1007. Nothing in the record here indicates that the defendant was compelled to testify against himself; the fact that the letters may have contained incriminating statements is not enough. There was no Fifth Amendment violation.

 The defendant's next argument regarding the letters is that they contained privileged information. The defendant contends the marital privilege should have precluded the introduction of the letters, since some of the letters sent to Beverlin were addressed to "Mrs. Robert Gajdos." Yet the defendant and Beverlin were not married, and the marital privilege is accorded only to those who maintain the legal relationship of husband and wife. *Lane v. State,* (1977) 266 Ind. 485, 364 N.E.2d 756; *Bergner v. State,* (1979) Ind.App., 397 N.E.2d 1012. There was no marital privilege to prevent the introduction of these letters.

 The defendant's last argument concerning these letters is that their introduction violated his right to privacy allegedly guaranteed by the Fourth Amendment. The defendant has not presented any argument on this point, and the issue is thus waived. To the extent, however, that the defendant is simply arguing he has standing to contest an illegal search because of an expectation of privacy, *see Rakas v. Illinois,* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, we have already held that there was no evidence of an illegal search.

Therefore, we find that state's exhibits 29 through 59 were properly admitted. There is no reversible error.

### III.

 During the state's re-direct examination of Lori Beverlin the state asked why she had been arrested. Beverlin replied that the reason was "because Rob was by my house" and later responded that it was "because I was hiding Rob." The defendant claims that this testimony violated a motion to suppress granted before trial. The motion prohibited testimony concerning (1) articles of clothing worn by the defendant when he was arrested; (2) the

written statement made by the defendant at the Hammond Police Department; (3) extrajudicial statements made at the Hammond Police Department; (4) all oral testimony by any police officer relative to visual observations made during the defendant's arrest; and (5) any verbal representations as to the contents of the statement. The effect of this motion was to prevent the fruits of an illegal, warrantless arrest from being introduced at trial. Beverlin's testimony did not violate this motion. The responses objected to by the defendant relate to Beverlin's arrest, not that of the defendant. Nowhere does the record show that Beverlin testified on the subjects covered by the motion to suppress. Further, we agree with the state that the defendant misunderstands the nature of a motion to suppress. The defendant asserts that a ruling prior to trial should remain effective and unchanged throughout the trial. But a ruling on a pretrial motion to suppress is not intended to serve as the final expression concerning admissibility. *Carpenter v. State*, (1978) 177 Ind.App. 161, 378 N.E.2d 908. The trial court did not err in allowing the state to ask why Beverlin had been arrested.

### IV.

The defendant next contends that he was deprived of the right to a timely and speedy appeal. This argument is based primarily on the fact that the trial court reporter failed to promptly provide the defendant with a copy of the trial transcript so that the defendant's pauper counsel could file a motion to correct errors. The defendant filed a Petition for Dismissal and Reversal of Conviction because of the delay. The petition was denied and the defendant now claims the trial judge erred in doing so.

The facts contained in the record disclose that the defendant was convicted and sentenced on September 19, 1980. The defense counsel was at this time ordered to file a motion to correct errors within sixty days. However, the defense counsel later indicated he did not intend to file a motion to correct errors but would instead attempt to obtain a modification of sentence. The defense counsel did file a Petition for Modification of Sentence and did not file a motion to correct errors. On November 19, 1981, the defendant's pauper counsel, appointed for the purpose of appeal, filed a Petition to File a Belated Motion to Correct Errors. This request was granted on December 10, 1981, and on December 11 the defendant made a request for the transcript. On December 14, 1981, the defendant requested an extension of time to file his motion. The trial judge granted the motion and gave the defendant sixty days after receipt of the transcript in which to file the motion to correct errors. On February 10, 1982, the trial judge set an appeal bond, but the defendant was unable to post bail and remained in jail. On September 2, 1982, the defendant filed a Petition for Immediate Release on the ground that the transcript had not yet been received. The trial court denied the motion. On September 13, 1982, the defendant filed his Petition for Dismissal and Reversal of Conviction, again based on the fact the transcript had not been received. At the hearing on this petition the defendant was informed the transcript was nearly complete. On October 1, 1982, the trial judge, having been informed that the transcript had been furnished to the pauper counsel, denied the motion to dismiss and reverse. The defendant filed his belated motion to correct errors on November 23, 1982.

The defendant's argument that the failure to promptly provide the trial transcript should result in reversal of the conviction is largely based upon the right to a speedy trial guaranteed in the Sixth Amendment. In support of his argument, the defendant cites *Guam v. Olsen*, (1978 D.Guam App.Div.) 462 F.Supp. 608, in which the Court held that a reversal and a dismissal were required because of a delay of approximately two years in the preparation of the trial transcript. Implicit in this holding was the Court's determination that the same corollary rights involved in speedy trials were involved in the speedy

termination of appeals. It appears, however, that most courts dealing with delays in the appeals process have held that the right to a speedy trial does not encompass the right to a speedy appeal. *Doescher v. Estelle,* (N.D.Tex.1978) 454 F.Supp. 943; *United States v. Alston,* (D.C.1980) 412 A.2d 351; *State v. Johnson,* (La.1978) 363 So.2d 458; *Commonwealth v. Swenson,* (1975) 368 Mass. 268, 331 N.E.2d 893; *Cunningham v. State,* (Tex.Cr.App.1972) 484 S.W.2d 906; *State v. Lagerquist,* (1970) 254 S.C. 501, 176 S.E.2d 141; *State ex rel. Mastrian v. Tahash,* (1967) 277 Minn. 309, 152 N.W.2d 786. In *United States v. Alston,* the Court stated:

"We agree that the Sixth Amendment does not apply to post-conviction appellate delay. That amendment was adopted to assure that one accused of a crime is brought to trial promptly. It does not guarantee, in addition, that the speedy trial clock continues to run during the pendency of one or more appeals until the trial assuredly has been fair."

*Id.,* 412 A.2d at 356–57 (citations omitted). In *State v. Lagerquist,* the Supreme Court of South Carolina held that the trial referred to in the Sixth Amendment meant a trial by jury to determine guilt or innocence and that it did not include an appeal. We agree with both the *Alston* and *Lagerquist* cases and therefore hold that the defendant had no Sixth Amendment right to a speedy appeal.

 Our holding does not mean that a delay in the appeals process is beyond the scrutiny of the Constitution, since an accused must be afforded due process and equal protection. Thus, the discriminatory *denial* of a right to appeal would be a violation of the Fourteenth Amendment, *Dowd v. United States,* (1951) 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215. There was no denial of the right to appeal in this case. As the Court noted in *State v. Lagerquist,*

"The only purpose in obtaining the transcript of the trial proceedings was to enable appellants to assert their right to an appellate review upon the merits of their convictions. The delay has not de-

prived them of that right. They may still assert it. Although delayed, there is no showing that the appeal upon the merits cannot be just as effectively prosecuted now as earlier."

*Id.,* 254 S.C. at 506, 176 S.E.2d at 143. While the defendant did remain in custody during the entire time the transcript was not provided, this was not sufficient prejudice to violate the Fourteenth Amendment. The conduct here was neither purposeful nor oppressive. In fact, the record reflects that the trial judge, when informed of the delays, took steps to help alleviate the problem. This included setting an appeal bond, which the defendant was not able to post. Based upon the facts of this case we find no violation of either the Due Process or Equal Protection Clause.

The delay in this case was unfortunate, and we in no way encourage or condone the action—or, rather, inaction—of the trial court reporter in providing the defendant with a copy of the transcript. Though we are cognizant of their ever increasing workload, the trial court reporter should make every effort to assure that the trial transcript is provided expeditiously to the defendant.

 Finally, the defendant also briefly asserts that his right to a speedy trial was violated because of the failure of his trial counsel to file a motion to correct errors, despite a trial court order that he do so within sixty days. In light of our holding above, the trial counsel's failure to file the motion cannot be said to have deprived the defendant of a constitutional right to a speedy appeal. Furthermore, the order referred to by the defendant was not an order to file a motion to correct errors; obviously, the trial judge will not order a party to file such a motion. Rather, the order here stated that, if the defendant decided to file a motion to correct errors, he do so within sixty days. There was no error.

## V.

The defendant contends that his trial counsel was incompetent and negligent in

his role as a defense attorney. Specifically, the defendant alleges that his attorney failed to investigate a witness's testimony, that he failed to move for a directed verdict at the close of all the evidence, and that he improperly decided not to appeal the conviction.

■ Our standard of review in ineffective counsel issues is the mockery of justice test as modified by the adequate legal representation standard. *Gross v. State*, (1983) Ind., 444 N.E.2d 296; *Darnell v. State*, (1982) Ind., 435 N.E.2d 250. Strong and convincing evidence is required to rebut the presumption that counsel is competent. *Gross v. State; Hollonquest v. State*, (1982) Ind., 432 N.E.2d 37. We will not speculate as to what might have been the most advantageous strategy in the case. *Tessely v. State*, (1982) Ind., 432 N.E.2d 1374.

■ None of the actions here amounted to ineffective assistance of counsel. The defendant first contends that his trial counsel failed to investigate a witness and call him to trial, yet the defendant did not know the witness's name. Also, nothing in the record reflects that this witness would have testified as the defendant claims he would have. The record does show that the trial counsel interviewed other witnesses, filed various pretrial motions, and conducted an adequate defense at trial. We cannot say that the counsel's alleged failure to investigate one witness constituted ineffective assistance of counsel.

■ The failure of the trial counsel to move for a directed verdict also did not constitute ineffective counsel. The defendant asserts that because the motion was not made he was not able to raise the issue on appeal. This is not sufficient prejudice to base a finding of ineffective assistance of counsel. In any event, we will not second guess a trial counsel's strategy, and we note that there may have been a valid reason for not making a motion for a directed verdict, since the trial judge had previously denied a motion made at the end of the state's case.

■ Finally, we find that the decision of the trial counsel not to appeal was not ineffective assistance of counsel. The defendant alleges his counsel persuaded him not to appeal because there was a chance that the defendant might receive a greater sentence in a new trial. The defendant points out that since he received the maximum sentence for manslaughter he could not receive a greater sentence if we were to reverse for a new trial. Once again, however, we find nothing in the record before us that reflects that the trial counsel gave the advice the defendant claims he was given. Even if we assume that the advice was given, it is quite possible that the attorney was referring to the fact that new crimes, including burglary, might be charged in a new trial. Therefore, the defendant has failed to establish by clear and convincing evidence that he received inadequate assistance of counsel.

### VI.

■ The defendant has raised two questions concerning his twenty-year sentence. The first concerns whether the trial judge adequately disclosed his reasons for enhancing the basic sentence. Our statutes require the judge to make a record of the reasons for selecting the sentence imposed. Ind.Code § 35–38–1–3 (Burns 1983 Supp.). As stated in *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316, this requirement serves two important goals:

> "First, the judge is confined to proper grounds for either increasing or decreasing the presumptive sentence provided for the offense; and, second, the appellate court is enabled to determine the reasonableness of the sentence imposed, under the circumstances."

*Id.*, 417 N.E.2d at 319. We find that the record here, while not as detailed as we would prefer, sufficiently details the trial judge's decision to enhance the basic sentence by ten years. The judge stated that he had considered mitigating circumstances, including the fact that the defendant had no substantial criminal history and the fact that the defendant was only twenty

years old. As aggravating factors, the trial judge noted that the killing was apparently unprovoked, that it was an extremely brutal killing, and that the defendant failed to show any remorse. As such, the judge stated he felt a reduced sentence would depreciate the seriousness of the crime. These facts were sufficient to support the enhanced sentence.

The defendant additionally contends that the trial judge abused his discretion by sentencing a co-defendant to a lesser term than the defendant. The record shows that Donald Phelps, the co-defendant, pled guilty as a result of a plea bargain and received a thirteen-year sentence. We have previously held that the state has a legitimate interest in encouraging the entry of guilty pleas. *Williams v. State*, (1982) Ind., 430 N.E.2d 759. A defendant who enters a guilty plea "has extended a substantial benefit to the state and deserves to have a substantial benefit extended to him in return." *Id.*, 430 N.E.2d at 764. In *Morgan v. State*, (1981) Ind., 419 N.E.2d 964, we stated "that when one defendant proceeds to trial and his accomplice pleads guilty, the sentences need not be identical." *Id.*, 419 N.E. at 969. The penalty given to the defendant here was within the parameters authorized by statute, *see* Ind.Code § 35–50–2–5 (Burns 1979 Repl.), and there were sufficient reasons given for the enhanced term. We find no reason to disturb the trial judge's decision.

For all the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.